John C. **GROSS**

v.

The **UNITED STATES.**

No. 443–73.

United States Court of Claims.

Nov. 20, 1974.

Dennis C. McFarland, Sioux Falls, S. D., attorney of record, for plaintiff; John N. Gridley, III, Soux Falls, S. D., of counsel.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before DAVIS, SKELTON and KUNZIG, Judges.

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge:

The plaintiff is a farmer in South Dakota who was denied participation in the Feed Grain Programs administered by the Department of Agriculture for the years 1968, 1969, 1970, and 1971, because he was found guilty of violating the regulations issued by the Secretary of Agriculture governing the programs. The programs authorized payments to farmers for diverting some of their land from the production of specified grains, such as corn and barley, known as feed grain, to approved conservation uses.

The statutes authorizing these programs are as follows:

The 1968–1970 Feed Grain Programs were authorized by section 16(i) of the Soil Conservation and Domestic Allotment Act, as amended by the Food and Agriculture Act of 1965, enacted November 3, 1965, 79 Stat. 1190, 82 Stat. 996; and by section 105(e) of the Agriculture Act of 1949, as amended, 79 Stat. 1188, 82 Stat. 996.

The 1971 Feed Grain Program was authorized by section 105 of the Agriculture Act of 1949, as amended by the Agricultural Act of 1970, enacted November 30, 1970, 84 Stat. 1368.

This motion specifically involves a basic, statutory provision for the finality of the administratively determined facts involved in determination of lack of eligibility to participate in the instant Feed Grain Programs, 7 U.S.C. § 1385. It was originally enacted as section 385 of the Agricultural Adjustment Act of 1938, 52 Stat. 68, and, although the section has been amended from time to time, it has been in effect ever since, with the finality language of the statute fundamentally unchanged.

Immediately prior to enactment of the Agricultural Act of 1970, on November 30, 1970, 84 Stat. 1358 et seq., section 1385 provided, in pertinent part, as follows:

The facts constituting the basis for any payment under the Soil Conservation and Domestic Allotment Act, as amended, parity payment, payment under section 1339 of this title, [i. e., diverted acreage payments] loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. * * * [7 U.S.C. § 1385 (1964)]

The Agricultural Act of 1970, supra, continued the Feed Grain Program, for the crop years 1971, 1972, and 1973, by amendment to section 105 of the Agri-cultural Act of 1949, as amended. 84 Stat. 1368. As part of the same enactment, it made the aforesaid finality provision of the Agricultural Adjustment Act of 1938, as amended (section 385; 7 U.S.C. § 1385) applicable in express terms to payments under the feed grain set-aside program (and also to payments made under the cotton and wheat programs, also provided for in the same Act), as the Feed Grain Program was now authorized under the said Agricultural Act of 1970, independent of the Soil Conservation and Domestic Allotment Act, 84 Stat. 1366 (§ 404(5)); id., 1378 (§ 605(3)). The amendment did not change the fundamental thrust of section 1385, which after the 1970 amendment, read, in pertinent part, as follows:

The facts constituting the basis for any payment under the Soil Conservation and Domestic Allotment Act, as amended, parity payment, payments under the cotton set-aside program, payments (including certificates) under the wheat and feed grain set-aside programs, payment under section 1339 of this title, [i. e., diverted acreage payments] loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. * * * [7 U.S.C. § 1385 (1970)]

The regulations issued by the Secretary provided generally for tenants and sharecroppers to receive a proportionate part of the program payments, based on their rental or sharing agreement with the owner or operator of the farm; precluded payments if the owner or operator reduced the number of tenants and sharecroppers on the farm in anticipation of or because of participating in the programs; and required refund by producers of payments to which they were not entitled, including payments in which the county Agricultural Stabilization and Conservation Committee (ASC

Committee) determined that the share received by the tenants and sharecroppers was not fair and equitable, based on the guidelines contained in the regulations for the division of payments. The Secretary was specifically authorized by statute to issue regulations providing for a fair and equitable division of payments to participating producers on farms. The Act of November 3, 1965, *supra*, added subsection (i) to section 16 of the Soil Conservation and Domestic Allotment Act, as amended. 79 Stat. 1190. Subsection 16(i)(4) stated as follows:

(4) The Secretary shall provide by regulations for the sharing of payments under this subsection among producers on the farm on a fair and equitable basis and in keeping with existing contracts. [79 Stat. 1192]

In like manner, the November 30, 1970 Act, *supra*, amended section 105 of the Agriculture Act of 1949, as amended. 84 Stat. 1368. As amended, sections 105(d) and 105(h) stated as follows:

(d) The Secretary shall provide for the sharing of payments under this section among producers on the farm on a fair and equitable basis.

\* \* \* \* \* \*

(h) The Secretary is authorized to issue such regulations as he determines necessary to carry out the provisions of this section. [84 Stat. 1370, 1371]

The regulations issued by the Secretary applicable to this case are contained in Title 7—Agriculture, Code of Federal Regulations. They are listed as follows:

Part 775—Feed Grains, Subpart-1966–69 Feed Grain Regulations (1970 ed.)

Part 775—Feed Grains, Subpart-1970 Feed Grain Program (1971 ed.)

Part 775—Feed Grains, Subpart-Feed Grain Set-Aside Program for Crop Years 1971–73 (1972 ed.)

Part 780—Appeal Regulations (1970 ed.)

Part 780—Appeal Regulations (1971 ed.)

Part 780—Appeal Regulations (1972 ed.)

Part 794—Division of Payments and Certificates (1970 ed.)

Part 794—Division of Payments and Certificates (1971 ed.)

Part 794—Division of Payments and Certificates (1972 ed.)

## The 1969 Feed Grain Program

On April 16, 1969, the Lake County, South Dakota ASC Committee notified plaintiff that his Feed Grain Contract for the 1969 Feed Grain Program had been disapproved by the Committee because he had violated the following sections of the regulations: § 775.-419(a)(2), § 775.419(a)(3); § 794.-3(a)(2) and § 794.3(a)(3). The notification letter set forth the provisions of the regulations that the Committee had determined that plaintiff had violated. The Committee found as facts that the plaintiff had violated the regulations by having reduced the number of tenants on his farms in anticipation of or because of the programs; having exacted agreements from the tenants which caused them to pay over to him payments earned by them under the program; having sought an agreement with a tenant which would have changed the tenant's status so as to deprive him of payments he otherwise would have received under the program; and having sought an agreement with a tenant which would have reduced the size of the production unit.

The Committee denied the plaintiff the right to participate in the program for 1969 because of these violations, causing plaintiff a loss in payments of $7,670.74.

The plaintiff appealed to the State ASC Committee, which sustained the decision of the County Committee. Plaintiff then appealed to the Deputy Administrator, State County Operations, ASCS, Department of Agriculture, Washington, D. C., who conducted a hearing which was attended by the plaintiff. The Deputy Administrator sustained the State and County Committees' decisions declaring plaintiff ineligible to participate in the program, and denied his appeal. The plaintiff requested the Deputy Administrator to reconsider the decision. The request was denied. The plaintiff then appealed from the denial of reconsideration and requested a hearing and the Deputy Administrator accepted the appeal and held

a hearing which was attended by the plaintiff. (In the meantime, the matter had been reopened at the county and state levels to permit those committees to determine whether plaintiff had any new information they had not previously considered.) Following the hearing on the reconsideration appeal, the Deputy Administrator notified the plaintiff that his prior decision holding plaintiff ineligible to participate in, and to receive payments under, the 1969 Feed Grain Program was affirmed.

### The 1968, 1970 and 1971 Feed Grain Programs

The plaintiff participated in the 1968, 1970, and 1971 Feed Grain Programs and was paid $7,904.70 by the Government for such participation. However, on November 23, 1971, the Executive Director of the Lake County ASC Committee notified him in writing that an investigation had revealed that plaintiff had violated the landlord-tenant provisions of the regulations in each of those years, and, consequently, was ineligible to participate. The violations were set forth in detail in the Executive Director's written notice, which consisted, in the main, of findings that there existed between the plaintiff and his tenants, in each of these years, a lease, contract, agreement, or understanding, unfairly exacted or required by him, which required the tenants to pay over to him the payments earned by and paid to the tenants under the programs. The notice from the Director requested refund of the amounts paid to the plaintiff and also the amounts paid to the tenants which he had forced them to pay to him, all in the total sum of $7,904.70.

The plaintiff appealed to the County ASC Committee, which held a hearing that was attended by plaintiff and his attorney. The County Committee sustained the prior determination of the Executive Director regarding plaintiff's ineligibility.

The plaintiff appealed to the State Committee, which also held a hearing. The plaintiff and his attorney were present. The State Committee affirmed the decision denying plaintiff's participation during the years involved.

The decision of the State Committee was appealed by the plaintiff to the Deputy Administrator State and County Operations, ASCS, Washington, D. C., who scheduled a hearing to which plaintiff was invited to attend in person or by representative. The plaintiff declined to attend by notifying the Director, Program Division, ASCS, Washington, D. C., in writing. Thereafter, on June 7, 1972, the Deputy Administrator sustained the decisions of the County and State Committees that plaintiff was ineligible to participate in the 1968, 1970, and 1971 Feed Grain Programs. The plaintiff filed this suit on November 23, 1973, in which he says he has been damaged in the sum of $7,904.70 in connection with the 1968, 1970, and 1971 Feed Grain Programs. He asks for judgment against the United States for the amount already set off by the Department of Agriculture and that the United States be enjoined from setting off further monies due plaintiff.[1] He also seeks judgment for $7,670.74 denied him under the 1969 Feed Grain Program. The defendant has moved for summary judgment.

■■ The plaintiff alleged in his petition that the defendant violated Department of Agriculture Regulations sections 775.418, 775.419(a)(2), 775.-419(b) or 775.418, 775.403, 775.416, and 775.425. However, this is a general allegation, and a conclusion that is not supported by any facts pleaded by plaintiff nor specifically pointed out in his brief. In other words, the plaintiff has not specified nor shown how any regulation was violated by the defendant. The plaintiff clearly has this burden in his attack on the administrative decisions in this case. *See* Sundstrand Turbo v.

---

1. Apparently the Government has set off the $7,904.70 against payments due plaintiff in later years, as it has not filed a counterclaim for its recovery.

United States, 389 F.2d 406, 182 Ct.Cl. 31 (1968); Williamsburg Drapery Co. v. United States, 369 F.2d 729, 177 Ct.Cl. 776 (1966), and Jefferson Construction Co. v. United States, 368 F.2d 247, 177 Ct.Cl. 581 (1966). The plaintiff has failed to meet this burden. His general allegation of noncompliance cannot overcome the strong presumption that Government officials acted properly and faithfully discharged their duties and that the regulations and procedures involved were properly observed and carried out. Cooper v. United States, 203 Ct.Cl. 300 (1973); Bethlehem Steel Corp. v. United States, 423 F.2d 300, 191 Ct.Cl. 141 (1970), and Biddle v. United States, 186 Ct.Cl. 87, 104 (1968). Furthermore, it appears from the record in this case that the regulations and procedures were properly followed and complied with.

■ The plaintiff says that a summary judgment should not be granted in this case because there are unresolved questions of fact, but he does not specify what they are nor point to them in the administrative record. He attempts to sustain this contention by denying that he violated any of the regulations and that the findings of the agency to the contrary were wrong. Such general conclusions do not constitute unresolved questions of fact. The record in this case shows that the handling of this case by the Department of Agriculture is a model of fairness to the plaintiff. Seldom does one see a case where an administrative agency gives a claimant as many opportunities to present his side of the case as was done by the Department of Agriculture in the instant proceeding. He was granted every appeal and every hearing that he asked for, and was allowed to appear in person and furnish evidence in his behalf at every step in the administrative process. All facts were received and repeatedly considered and reconsidered by the officials of the agency. The plaintiff was invited to present evidence not only at the hearings, but also by correspondence. All facts were thoroughly and complete considered many times. There are no unresolved questions of fact.

■■ The plaintiff argues that the $7,904.70 paid to him under the 1968, 1970, and 1971 Programs are final as to the Department of Agriculture under the finality provisions of 7 U.S.C. § 1385, *supra*, and cannot be reviewed by any *other* officer or agency of the Government. Yet the plaintiff contradicts this statement by asking this court, which is another agency of the Government, to review the facts relating to such payments and to give him a judgment for the amount involved. Obviously, the plaintiff cannot have it both ways. The plaintiff loses sight of the fact that 7 U.S.C. § 1385 does not prohibit the Department of Agriculture from reviewing its own decisions. The prohibition is against a review by any *other* officer or agency of the Government. The agency clearly had the right to review its decision regarding these payments after a proper investigation and to require a refund if the facts warranted it. In fact, the regulations that authorized the payments in the first place provide for such a refund. See sections 775.418(d) and 794.2(e) of the Department of Agriculture Regulations which provide as follows:

§ 775.418 Division of diversion and price support payments.

(d) *Refund of payments not properly divided.* Payments which producers receive to which they are not entitled, including diversion payments which the county committee determines are not fair and equitable based on the factors provided in this section, shall be refunded to the county committee. In the event of fraud, the producer shall be subject to the provisions of § 775.421.

§ 794.2 Division of diversion payments, price support payments, and wheat marketing certificates.

(e) *Refund of payments and wheat marketing certificates not properly divided.* Payments and wheat marketing certificates which producers re-

ceive, to which they are not entitled, including diversion payments which the county committee determines are not fair and equitable based on the factors provided in this section, shall, in the case of payment, be refunded to the county committee and, in the case of certificates, be returned to the county committee or the value thereof paid to the Commodity Credit Corporation. In the event of fraud, the producer shall be subject to the provisions pertaining to fraudulent representation in the applicable program regulations. (Sec. 339, 76 Stat. 622; 7 U.S.C. 1339) [32 F.R. 19155, Dec. 20, 1967, as amended by Amdt. 1, 34 F.R. 1227, Jan. 25, 1969]

The above regulations clearly authorized the agency to demand and collect the refund under the circumstances of this case.

The defendant urges that its motion for summary judgment be granted because the factual determinations made by the agency are final under 7 U.S.C. § 1385 and are not subject to judicial review. While this appears to be a question of first impression in this court, the decisions of other courts support this proposition. Aycock-Lindsey Corp. v. United States, 171 F.2d 518, 522 (5th Cir. 1948), 187 F.2d 117 (5 Cir. 1951); Gregory v. Freeman, 261 F.Supp. 362, 365 (N.D.N.Y.1966); United States v. Kopf, 379 F.2d 8, 12 (8th Cir. 1967); United States v. Moore, 298 F.Supp. 199, 200 (S.D.Ohio 1969).; United States v. Gomes, 323 F.Supp. 1319 (E.D.Cal. 1971); and cases cited in the foregoing cases.

In United States v. Gomes, *supra*, the court discussed the decisions in most of these cases and analyzed the finality provisions of 7 U.S.C. § 1385 as follows:

Now the government has moved for summary judgment on Count III of the complaint. The basis for this motion is the government's theory that administrative determinations made under the Feed Grain Programs are final and conclusive and not subject to

review. This theory is based on the fact that the Soil Conservation and Domestic Allotment Act, which authorized the Program, contains no provisions for judicial review. It is also based on the provisions of Section 385 of the Agricultural Adjustment Act (hereinafter, the AAA), which in pertinent part provides as follows:

The facts constituting the basis for any payment under the Soil Conservation Act, * * * when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. 7 U.S.C. Sec. 1385.

This statute and similar statutes have been interpreted on several occasions as a bar to judicial review of administrative determinations of fact.

Section 385 was analyzed as follows in Aycock-Lindsey Corp. v. United States, 171 F.2d 518, 522 (5th Cir. 1948):

We do not interpret the Act as preventing, or undertaking to prevent, a review by the courts of the legal questions involved, but only to preclude a review of the facts constituting the basis for payment.

Gregory v. Freeman, 261 F.Supp. 362 (N.D.N.Y.1966) was a case directly concerned with AAA Sec. 385 (7 U.S.C. Sec. 1385). This case was an action in which plaintiff sought an order annulling a determination of the county committee under the 1963 Feed Grain Program. The determination withheld payment of the final installment alleged to be due under the program and directed that a payment already made be returned with interest. The court concluded that it lacked jurisdiction over the matter. It declared:

7 U.S.C. § 1385 and 7 C.F.R. Sec. 775.216 attach finality to the findings of the state committee on ques-

tions of fact. Congress, if it so chooses, may make the administrative rejection of a claim final and conclusive * * * If an agency determination is made final and conclusive by Congress, as it was here, the district court is without jurisdiction to review such action.

United States v. Moore, 298 F.Supp. 199 (S.D.Ohio 1969), was a case very similar to the instant case. It was an action by the United States to recover payments made to the defendant, under the Feed Grain Program. Defendant was accused of exceeding her allotted acreage. The district court granted the motion by the United States for summary judgment on the grounds that the determination of the state agricultural stabilization committee was final and conclusive under AAA Sec. 385 (7 U.S.C. § 1385), and ordered the defendant to return all moneys paid to her.

The case of Mario Mercado E. Hijos v. Benson, 97 U.S.App.D.C. 298, 231 F.2d 251 (1956) was concerned with Section 306 of the Sugar Act. This section provided that "[t]he facts constituting the basis for any payment, or the amount thereof authorized to be made under this title, officially determined in conformity with rules and regulations prescribed by the Secretary, and his determinations with respect thereto shall be final and conclusive." The court said of this statute: "We think this makes it clear that Congress intended to preclude judicial review, not only of the Secretary's finding but of the hearing which led to it."

In Elliott v. United States, 179 F. Supp. 758 (D.Neb.1959), the court was concerned with a provision of the Soil Bank Act found at 7 U.S.C. Sec. 1831(d), which stated that "the determination of the State committee made in accordance with regulations of the Secretary shall be final and conclusive." The court declared that "In the absence of a complete disregard or unjustifiable interpretation of the

facts and the procedural and substantive regulations of the Secretary, which is not present here, this Court will follow the statutory mandate of Congress and refuse to review either the fact constituting the basis for payment or the amount thereof authorized under the Soil Bank Act." *Accord*, Holden v. United States, 297 F. 2d 831 (8 Cir., 1962).

It is the court's conclusion that the weight of authority requires the view that the official determinations of program administrators are final and conclusive, and not reviewable by the court. Defendant has not cited any authorities to compel me to the opposite view. [*Id.* at 1320–21]

The defendant cites other Acts dealing with agriculture that have language similar to 7 U.S.C. § 1385 which various courts have construed and applied as having finality provisions that are binding on the courts as follows:

The Soil Bank Act (7 U.S.C. §§ 1801, 1836 (1964)) contains a comparable provision, set forth in substantially identical language (at § 1809). It has been construed and applied in the same manner. Elliott v. United States, 179 F. Supp. 758, 761, 764 (D.Neb.1959); Dickson v. Edwards, 293 F.2d 211, 213–214 (5th Cir. 1961); Caulfield v. United States Department of Agriculture, 293 F.2d 217, 219–221 (5th Cir. 1961); United States v. Yarbrough, 290 F.Supp. 4, 6 (N.D.Miss.1968); and cases cited in the foregoing cases.

Likewise, the National Wool Act, as amended, 7 U.S.C. §§ 1781, 1785 (1970), contains such a finality provision, also in substantially identical language (at § 1785) and it too has been construed and applied in this manner. United States v. Blackwell, 467 F.2d 1377 (5th Cir. 1972).

The same situation prevails under the Sugar Act of 1948, 61 Stat. 922, 7 U.S. C. § 1100 (1970). It contains a substantially identical finality provision, 61 Stat. 932, 7 U.S.C. § 1136 (1970), and it has been similarly interpreted and ap-

plied. Mario Mercado E Hijos v. Benson, 97 U.S.App.D.C. 298, 231 F.2d 251, 252 (1956).

 It is concluded that the factual determinations made by the agency in this case are entitled to finality under 7 U.S.C. § 1385 and are not subject to review by this court; and the decisions of the agency based on such factual determinations are also entitled to finality and are not subject to judicial review, except as to questions of law, or allegations and proof by the plaintiff that such decisions were arbitrary or capricious. The burden of proof is on the plaintiff to allege and prove that the decisions were arbitrary or capricious. Crain v. United States, 84 F.Supp. 876, 114 Ct.Cl. 94 (1949), cert. denied, 339 U.S. 911, 70 S.Ct. 566, 94 L.Ed. 1337 (1950); Aycock-Lindsey Corp. v. United States, *supra*. The plaintiff has not discharged this burden in this case. Neither has the plaintiff raised any question of law that requires judicial review.

Accordingly, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.