UNITED STATES of America

v.

Glynn BATSON, et al.

UNITED STATES of America

v.

Dale LEVERETT, et al.

UNITED STATES of America

v.

Lois PRATHER.

UNITED STATES of America

v.

T.A. WARTES, et al.

UNITED STATES of America

v.

A. Earl JONES, et al.

UNITED STATES of America

v.

Don H. WILSON, et al.

UNITED STATES of America

v.

Earl BOWMAN, et al.

Civ. A. Nos. CA–5–79–53, CA–5–79–55, CA–5–79–57, CA–5–79–73, CA–5–79–74, CA–5–79–75 and CA–5–79–84.

United States District Court,
N.D. Texas,
Lubbock Division.

June 13, 1984.

See also, D.C., 588 F.Supp. 867.

Barbara Allen Babcock, Asst. Atty. Gen., Stuart E. Schiffer, Acting Asst. Atty. Gen., U.S. Department of Justice, Judith Ellen Rabinowitz, Robert L. Ashbaugh, Civil Division, U.S. Department of Justice, Washington, D.C., James A. Rolfe, U.S. Atty., Dallas, Tex., Roger L. McRoberts, Asst. U.S. Atty., Lubbock, Tex., for plaintiff in all cases.

John Saleh, Lamesa, Tex., for defendants Glynn Batson and South Plains Land Corporation, CA–5–79–53 and Lois Prather, CA–5–79–57.

Jack P. Driskill, McWhorter, Cobb & Johnson, Lubbock, Tex., for defendant Johnny Lemmons, CA–5–79–53.

John L. Shepherd, Johnny Roy Phillips, Seminole, Tex., for all defendants, CA–5–79–55, CA–5–79–73, and CA–5–79–84 and defendants A. Earl Jones, Darrell Miller, Dale Wiley, Earl Weddle, W.D. Wilson, Bill Williamson, Robert Bowers, Don Kingsley, H.C., CA–5–79–74.

C.L. Mike Schmidt, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for defendant Estate of Gene Cotton CA–5–79–74.

Dempsy J. Prappas, pro se.

Prappas, Moncure, Eidman & Solomon, Houston, Tex., for defendant Dempsy J. Prappas, CA–5–79–74.

Kenneth Jones, Lubbock, Tex., for defendant Robert Crowder, CA–5–79–74.

G. Ernest Caldwell, pro se.

James H. Wilson, pro se.

John L. Shepherd, Seminole, Tex., for defendants Don H. Wilson, Jimmy Crook, Sidney Carter, Robert Freske, T.V. Leopard, H.C. Thomas, John H. Stockton, Bobby G. Odom, Winston Odom, and James R. Odom, CA–5–79–75 and defendant Stanley Reed, CA–5–79–74.

Marvin Schulman, pro se.

George H. McCleskey, McCleskey, Harriger, Brazill & Graf, Lubbock, Tex., for defendant Leslie Aikin, CA–5–79–75.

Dennis Banta, pro se.

## ORDER

WOODWARD, Chief Judge.

### I.

The United States filed suit to recover overpayment of cotton subsidies made in 1972 and 1973 under the Upland Cotton Price Support Program, 7 U.S.C. § 1444(e) (1974). This court dismissed the United States' complaints on statute of limitations and constitutional grounds. The Fifth Circuit affirmed the dismissal of the United States' claims for 1972 payments based on statute of limitations, but reinstated the complaints in all other respects, holding that limitations did not bar the actions based on the 1973 payments and that the regulations under which the United States sought recovery were not unconstitutionally vague. The remaining issues are now before this court on remand. The plaintiff filed Motions for Summary Judgment based on the finality of the agency determinations under 7 U.S.C. § 1385. The defendants filed Motions to Dismiss and alternative Motions for Summary Judgment in favor of the defendants. For the following reasons, the United States' Motions for Summary Judgment are *granted*, and the defendants' Motions to Dismiss and alternative Motions for Summary Judgment are *denied*.

The plaintiff filed identical Motions for Summary Judgment, but attached a separate appendix for each case. The appendices contain the final Agricultural Stabilization and Conservation Service (ASCS) determination, as well as the county and state level administrative reconsiderations in each case. The Government motions are based on the statutory nonreviewability of the administrative determination. 7 U.S.C. § 1385. *United States v. Jones*, CA–5–79–56, (N.D.Tex. Memorandum May 12, 1980, Final Judgment October 22, 1980), *aff'd mem.*, 659 F.2d 1073 (5th Cir.1981).

The defendants responded by filing Defendants' Motion to Dismiss, Opposition to Plaintiff's Motion for Summary Judgment, and Alternatively, Motion for Summary Judgment in Behalf of the Defendants.[1]

The defendants raise a myriad of issues in their responsive motions, but do not contend there are any disputed issues of fact as to the basis of the findings. The principal argument made by the defendants is that the administrative determinations upon which the Government relies were made in violation of the applicable regulations and procedural due process. The defendants attached no affidavits or documentary evidence, nor did they refer to the administrative record on file to support their contentions and did not comply with the obligations imposed upon them by Rule 56(e), Federal Rules of Civil Procedure, and Local Rule No. 5.2(a). Though the defendants allude to potential due process problems, the allegations are general and conclusory. For example, the defendants do not list the necessary witnesses that were unavailable for cross-examination nor do the defendants explain precisely how the administrative proceedings were affected by "prejudgment and bias." Despite the inadequacy of the defendants' responses, the court will address each contention.

### II.

The court's review of ASCS final administrative determinations is limited by statute. 7 U.S.C. § 1385 states that:

> The facts constituting the basis for any ... payment under ... upland cotton ... authorized by the Agricultural Act of 1949 [7 U.S.C.A. § 1421 *et seq.* ] and this chapter, any or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary ... shall be final and conclusive

---

1. Defendants Batson and Prather filed one responsive motion; defendants Caldwell, Lemmons and Prappas filed separate but identical responses (Lemmons is a defendant in the *Batson* case, Caldwell and Prappas are defendants in the *Jones* case); and defendants Leverett, Wartes, Jones, Wilson and Bowman filed one motion. Each defendant, however, adopted the briefs and motions of every other defendant, so that every issue raised must be addressed with respect to each defendant.

and shall not be reviewable by any other officer or agency of the Government.

The United States Court of Claims explained the circumscribed power of judicial review in *Gross v. United States*, 505 F.2d 1271, 205 Ct.Cl. 605, (1974). In that case, the ASC committee found that the plaintiff had violated several Seed Grain program regulations and ordered refund of certain payments; the government also withheld subsequently earned payments as a set-off against the debt. The plaintiff sued to have the payments released, claiming that the government had violated the Department of Agriculture regulations, and the government counterclaimed for summary judgment. The court held that the plaintiff had the burden in his attack on the administrative determinations, and that burden was not met by the general, conclusory and unsupported allegations made by the plaintiff. *Id.* at 1275–6. The plaintiff's "general allegation of noncompliance cannot overcome the strong presumption that Government officials acted properly and faithfully discharged their duties and that the regulations and procedures involved were properly observed and carried out." *Id.* at 1276.

The court granted the government's motion based on the finality of the agency's factual determinations under 7 U.S.C. § 1385. All that section leaves for review, according to the court, are questions of law or allegations and *proof* by the plaintiff that the decisions of the agency based on its factual determinations were arbitrary and capricious or constitute a denial of due process. *Id.* at 1279. The scope of review is narrow and the burden upon the party contesting the agency decision is great. "In the absence of a complete disregard or unjustifiable interpretation of the facts and the procedural and substantive regulations of the Secretary, which is not present here, this Court will follow the statutory mandate of Congress and refuse to review either the fact constituting the basis for payment or the amount thereof...." *Id.* at 1278.

Similarly in the case at hand, the defendant's unsupported allegations of denial of due process are insufficient to overcome the strong presumption in favor of the agency findings. And further, the findings of the ASCS and the decisions based on these findings were not arbitrary or capricious, and it would thwart the clear congressional scheme for this court to substitute its judgment or findings of fact for that of the ASCS.

### III.

■ The defendants first argue that they cannot be held liable for refund under 7 C.F.R. § 722.817 because they are not "producers" and did not "receive" program payments. 7 C.F.R. § 722.817, as amended provides:

> A *producer* who is determined by the State committee, or the county committee with the approval of the State committee, to having knowingly ... adopted any scheme or device which tends to defeat the purpose of the program, ... shall not be entitled to payments for any farm under the program and shall refund to the Commodity Credit Corporation all payments *received* by him with respect to the program.

(emphasis added).

The Government does not dispute the fact that some of the defendants were not "producers." The point is that the entire scheme to evade the regulations, and particularly the $55,000.00 per producer payment limitation, was the joint effort of producers and operators. The defendants who are claiming innocence in the fact that they were operators and not producers were operators for the sole purpose of evading the regulations; the defendant operators retained tracts equaling the $55,000.00 limit, then leased the rest to other defendant "producers" and indirectly received the subsidy payments in the guise of rent. The agency found that the collaborators—both operators/lessors and producers/lessees—acted *knowingly* to evade the regulations; a finding with which the Fifth Circuit has concurred. *United States v. Batson*, 706 F.2d 657 (5th Cir.1983). 7 C.F.R. § 722.817 is a broad remedial regu-

lation, intended to thwart such a scheme. *Id.* at 683. Technical distinctions placing form over substance should not be allowed to obstruct the purpose of the regulations. Further, the form over substance argument does not alter the finality of agency findings under 7 U.S.C. § 1385.

## IV.

■ The defendants next argue that the administrative determinations are invalid because of "inordinate delay in the administrative process." The defendants have not specified what part of the proceedings were delayed but merely assert that some delay, which was allegedly the fault of the United States, violated due process. The only delay reflected in the record was for a criminal investigation (of the same subject matter). Such a delay was to protect the Fifth Amendment rights of the defendants, not to violate their due process rights. *See Polcover v. Secretary of Treasury*, 477 F.2d 1223, 1233 (D.C.Cir.1973). With several criminal investigations going on, it was unlikely that the defendants could adequately interrogate and question potential witnesses in this case because of their knowledge of the possibility that criminal implications might be widespread. Delay for this reason is fully justified and does not afford a denial of due process.

## V.

The defendants' main contention is that they were denied their due process rights to cross-examine the Government's witnesses during the administrative hearings. Again, the defendants make an unsupported and general allegation. At the hearing on May 23, 1984 the defendants, for the first time, introduced evidence in support of their due process argument. The court postponed ruling on the motion and gave defendants leave to submit additional support in the record for their contentions. The court, now having before it the additional submissions of the defendants and responsive submissions from the government, finds that such evidence reflects no denial of the defendants' due process rights.

Though the defendants make the general argument that they were denied due process because they were not allowed to confront and cross-examine witnesses against them, their argument is two-part. First, defendants assert that their "constitutional right to confrontation and cross-examination is effective only if granted and given *prior* to the *first* administrative determination. Once Mr. Adams ... had made the initial administrative determination in violation of due process for failure to allow confrontation and cross-examination, then, thereafter, all future administrative determinations are tainted with that deprivation of due process." Defendants post-hearing letter, dated May 28, 1984. (emphasis added). Second, defendants argue essentially that the government's lack of subpoena power violates due process.

## V A.

■ The fact that the ASCS held no hearings prior to making its *initial* determination of liability does not constitute a violation of due process. *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598–600, 70 S.Ct. 870, 872–873, 94 L.Ed. 1088 (1950). The agency conducted an investigation, made a determination and then notified the defendants in accordance with the regulations. At that point, the appeal regulations provide the defendants with opportunity for reconsideration and appeal at the county, state, and national levels. 7 C.F.R. §§ 780 *et seq. See Mackatunas v. Finch*, 301 F.Supp. 1289 (E.D.Pa.1969) (use of statements not subjected to cross-examination is permissible before administrative agencies and does not constitute a denial of due process, *citing Cohen v. Perales*, 412 F.2d 44 (5th Cir.1969)). *See also American Public Gas Association v. Federal Power Commission*, 498 F.2d 718, 723 (D.C.Cir. 1974) ("The petitioners complain that they were denied the right to test through cross examination the underlying bases for the submitted data. Even in a formal adjudicatory hearing under the APA, however,

cross examination is not always a right."). The procedures set out in the regulations comport with due process, and the record in these cases show that the regulations were followed. *See Gross v. United States*, 505 F.2d 1271, 205 Ct.Cl. 605 (1974).

## V B.

■ The defendants' argument that, because the government lacked subpoena power, they were not allowed to cross-examine witnesses and were thus denied due process, is also without merit. First, it should be noted that the court is well aware of the fact that the defendants repeated their broad allegations of denial of due process throughout the course of the administrative proceedings.

The defendants' general assertion implies that hearings were held at which the government called witnesses, but did not allow them to be questioned by the defendants—an obvious denial of due process. The defendants further imply that the record contains instances in which a request for the testimony of a witness was made by a defendant and specifically denied by the government. Both implications are completely inaccurate. On the contrary, the agency made it clear from the *outset* that, though the defendants had the right to a hearing and to submit evidence and witnesses, it was the responsibility of the *defendant* to obtain the presence of such witnesses. The government stated on numerous occasions that the agency had no subpoena power and could not compel the testimony of witnesses, and that any testimony, including that of government employees, would have to be obtained voluntarily. *See* post-hearing submission of defendants. There is no evidence in the record of any attempt by the defendants to obtain the voluntary testimony of any witnesses. Had there been evidence in the record that: (1) the defendants attempted to obtain the testimony of a particular government employee, (2) that employee had refused to be questioned, (3) the defendants had further shown the relevance of such testimony, and (4) the government

had then refused to provide the defendants with such testimony, this court might find a lack of due process. The record in this case shows absolutely no such attempt by any of these defendants. The fact that the burden of producing testimony or witnesses was on the defendants does not, without more, violate due process.

Moreover, had the defendants initially requested the attendance of particular witnesses at a hearing, as did the *Doko Farms* defendants, the government presumably would have responded as it did to Doko's request:

> Considerable expense would be incurred at either your cost or that of the Department in making the employees that you have requested as witnesses available at the hearing. However, if you can justify a necessity for the production of any such employees as witnesses based upon grounds that would constitute a reasonable basis for belief that material information is held by the employee and state what new material evidence may be produced by your examination of the witness, we will again consider your request.

Letter from Victor Senechal to Jim Milam dated January 31, 1975, Plaintiff's Post-Hearing submission. Again, however, no such request was made by the defendants.

The argument made by defendants here is identical to the due process argument in the *Jones* case—which was ultimately rejected by this court and affirmed by the Fifth Circuit. *United States v. Jones, supra.* In *Jones*, this court remanded the case to the agency for the examination of witnesses who had previously been requested by the defendants. The defendants produced portions of transcripts and letters, many of which are identical in content to those produced by defendants here, making the same broad objections to lack of opportunity for cross-examination. But the defendants failed to produce any evidence showing their efforts to obtain witnesses, and summary judgment was therefore granted in favor of the United States. The defendants here have also failed to

produce evidence of any attempt to procure witnesses.

## VI.

■ Next, defendants contend they were denied due process because of the "improper interposition of the ASCS Hearing Officer Adams, in the administrative process ... and ... prejudgment and bias." The position of Adams as both a participant in the investigation and on adjudication has been addressed by this court in *United States v. Jones, supra* at page 8:

> The combination of adjudicative functions with other roles does not, without more, constitute a due process violation creating an unconstitutional risk of bias. *Withrow v. Larkin,* 421 U.S. 35 [95 S.Ct. 1456, 43 L.Ed.2d 712] (1975). If Adams had had a pecuniary interest in the outcome of the case, or if he had been personally abused or criticized by the defendants, their impermissible risk of bias would exist. *See Withrow, supra* at 47 [95 S.Ct. at 1464]. The court finds nothing and has been directed to nothing in the record before it, however, which would suggest personal or actual bias in Adams.

Because the defendants here have pointed to no bias other than that of Adams' dual-position, there is no violation of due process.

## VII.

Defendants next argue that their actions, upon which the Government asserts liability, were "taken in reliance upon the prior advice of the Plaintiff's authorized representatives." Defendants argue that the United States is thus precluded from asserting liability on grounds of *ex post facto* laches and estoppel. This argument is without merit. *See Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

## VIII.

The defendant Lemmons introduced at the hearing at Lubbock, Texas on May 23, 1984, a letter dated April 26, 1974 to Lemmonumental Farms, regarding the redetermination of liability of Johnny Lemmons, Bert Lemmons, and Melvin Bradley, stating as follows:

> Accordingly, I have determined that you did not knowingly adopt a scheme or device to defeat a purpose of the program and that you relied, in good faith, on erroneous information or advice furnished by the Gaines County ASCS Committee or its representative.

■ Defendant Lemmons argues that he therefore cannot be held liable under 7 C.F.R. § 722.817. The letter quoted above, however, goes on to state that the recommendation was made "pending redeterminations to be made with respect to Johnny Lemmons *as a result of his participation on other farms."* (emphasis added). In this Motion for Summary Judgment, the government is seeking refund from defendant Lemmons based on his joint and several liability with defendants Batson and Bowman. The administrative record attached to the United States' Motion for Summary Judgment contains specific findings that Batson and Lemmons, and Bowman and Lemmons, acted "knowingly."

## IX.

■ For the first time at the hearing, the defendants brought to the attention of the court the judgment recovered by the government against Jon-T. Chemicals, et al., in CA–5–78–75A, which judgment was based against the defendants in that case on all or many of the transactions involved in these seven cases. It was defendants' contention that they would have a right of contribution against Chemicals and others and that the government should not be allowed to have a double recovery against the defendants in this case as well as against Jon-T. Chemicals.

To afford defendants any relief on this basis would be based on conjecture as to what might happen in the future and the government could at the proper time be precluded from any recovery should that event occur and whether or not these de-

fendants have any right of contribution against Chemicals would depend on facts not before this court.

### X.

Under the circumstances shown by the record in this case and as outlined above, the court concludes that the seven determinations and decisions of the ASCS and Department of Agriculture are entitled to finality pursuant to 7 U.S.C. § 1385. The defendants were afforded three hearings at three separate levels and nothing contained in this record would indicate but that a full and fair hearing was afforded on each occasion. Therefore the determinations should be enforced and judgments entered accordingly.