**R. B. ELLIOTT, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

Civ. 222 L.

United States District Court
D. Nebraska.
Aug. 26, 1959.

---

John V. Addison, Wayne, Neb., for plaintiff.

Wm. E. Morrow, Jr., Asst. U. S. Atty., Lincoln, Neb., for defendant.

VAN PELT, District Judge.

This matter is before the Court upon a motion by the United States, the defendant, to dismiss the complaint filed by R. B. Elliott, pursuant to Section 107(d) (7 U.S.C.A. § 1831(d) of the Soil Bank Act (7 U.S.C.A. § 1801 et seq.). Defendant's motion is in two parts; that the complaint fails to state facts sufficient to invoke the jurisdiction of this court, and that the complaint fails to state facts upon which relief can be granted. As it is decisive to the matter before us, this Court shall consider only the first part of the motion pertaining to jurisdiction.

I. *The Facts*

Plaintiff was the owner and operator of a 540 acre farm in Cedar County, Nebraska. About March 29, 1957, he entered into a corn acreage reserve agreement for the year 1957 with the Agriculture Stabilization and Conservation Committee of the United States Department of Agriculture for Cedar County (hereinafter referred to as the County Committee). Plaintiff's agreement with the County Committee provided that he have a 1957 corn allotment of 88.5 acres, with an acreage reserve of 48.5 acres which was not to be used for any type of farm products, and that he could have and harvest 40 acres of corn and was entitled to a maximum compensation of $1,294.25 under and in compliance with the agreement. Plaintiff complied with the agreement by leaving 61.2 acres idle, which

constituted his acreage reserve as provided by law, and by harvesting no more than 40 acres of corn. After a meeting with the County Committee on September 26, 1958, plaintiff was advised on October 1, 1958, that he was ineligible for payment under the 1957 acreage reserve agreement. Thereafter, on November 16, 1958, the Agriculture Stabilization and Conservation Committee of the United States Department of Agriculture for the State of Nebraska (hereinafter referred to as the State Committee) held a hearing in regard to the plaintiff's 1957 acreage reserve agreement, and on December 16, 1958, plaintiff was advised that the State Committee concurred with the County Committee in determining that the plaintiff was ineligible for payment of compensation. The basis for the determinations of ineligibility by each separate Committee was that plaintiff had placed 65 acres of noncropland into production. The plaintiff had not been consulted by the County Committee as to the number of acres of cropland which he had on his farming unit, nor prior to harvesting the 65 acres was he advised by any official that such action would affect the amount of compensation under the 1957 acreage reserve agreement, although the County Committee had full knowledge of the planting of the 65 acres prior to the time of its harvest and plaintiff had been unofficially led to believe that it would have no effect on said agreement. These 65 acres, which had been in grass since about 1949, were plowed and planted to a grain crop at the same time that plaintiff voluntarily retired about 85 acres of other ground from the production of grain crops and planted them to grass. No increase in the total acreage of grain crops occurred, as the plaintiff had harvested in 1955 approximately 240 acres, in 1956 220 acres, and in 1957 180 acres of grain crops which included his 40 acres of permitted corn and the 65 acres in question.

The pertinent parts of the regulations governing the 1957 acreage reserve part of the Soil Bank Program as issued by the Secretary of Agriculture and applied by the County and State Committees so as to deny plaintiff any compensation under his 1957 agreement are as follows:

"If there has been no violation of the agreement, the amount of compensation payable for the commodity shall be determined by multiplying the rate of compensation per acre for the commodity, determined in accordance with § 485.217, by (a) the number of acres in the acreage reserve, or the number of acres which the producer has agreed to place in the acreage reserve, whichever is the smaller, less (b) the number of acres of new land not presently included in the cropland for the farms at the time of the signing of the agreement which is brought into cultivation and used for the production of a crop for harvest in 1957: *  *  *." 6 C.F.R. 485.216, as printed in 21 F.R. 10454 (Dec. 29, 1956).

"As used in §§ 485.201 to 485.240 and in all agreements, forms, documents and procedures in connection therewith, unless the context or subject matter otherwise requires, the following terms shall have the following meanings: *  *  * (r) 'Cropland' means farmland which in 1956 was tilled or was in regular crop rotation, including also land which was established in permanent vegetative cover, other than trees, since 1953, and which was classified as cropland at the time of seeding, but excluding (1) bearing orchards and vineyards (except the acreage of cropland therein), (2) plowable noncrop open pasture, and (3) any land which constitutes or will constitute if tillage is continued, an erosion hazard to the community." 6 C.F.R. 485.201, as printed in 21 F.R. 10449–450 (Dec. 29, 1956).

II. *Appeal Statutes and Regulation*

The statutes and regulation pertaining directly to the right of appeal to this court from a determination by the

County and State Committees appear in the appendix to this memorandum. A reading of the statutes reveals that the right to appeal is permitted only after a "determination \* \* \* as to whether there has been a violation which would warrant termination of the contract." The appeal regulation is applicable only to the subpart prescribing rules and procedures for determining whether a violation of an Acreage Reserve Agreement has occurred, so the regulations also indicate availability of appeal only after a determination of, at least, a violation of the contract.

Turning then to the question of whether there has been a determination of a violation of this matter, this Court is unable to perceive any such determination. The plaintiff's right to compensation has been denied by the County and State Committees not by any determination of a violation, but by a determination of the facts constituting the basis for payment and the amount authorized to be made under the Soil Bank Act in light of those facts. The acreage reserve agreement does not set any fixed amount of compensation but merely a maximum, nor does the agreement prohibit the placing into production of noncropland. The producer can lower the amount of compensation either by placing a fewer number of acres into reserve as that number agreed after making reasonable efforts to place the agreed number into reserve, or by bringing noncropland into production. Neither of these actions constitute a violation but merely act to reduce the compensation, the amount of reduction depending upon the number of acres involved. It is to be further noted that under the Conservation Reserve program of the Soil Bank Act the breaking out of noncropland is specifically made a violation of the contract and requires a forfeiture of the entire annual payment (6 C.F.R. 485.294d), while under the Violations Procedure for the Acreage Reserve Program, no such provision appears. See §§ 485.284–485.292.

Plaintiff relies on a portion of 6 C.F.R. 485.280 which states that when a determination of the Committee requires the producer to forfeit all rights to compensation under the agreement and to refund all compensation received thereunder, then "any such violation shall be regarded as a violation which warrants termination of the agreement." (In the most recent regulations as amended, the quoted language no longer appears.) However, this portion of the regulation does not act unless there has been a violation. Its effect is to allow an appeal to the United States District Court only in those cases where there has been a determination of a violation which *per se* does not warrant termination but does result in a complete forfeiture of all rights to compensation.

The plaintiff is therefore not provided with any affirmative right to appeal under the statutes and regulations of the Soil Bank Act. However, the right of appeal to this court is not necessarily precluded by the fact that no affirmative right of appeal is provided in this situation, although there is such in other administrative determinations under the Act. Stark v. Wickard, 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733. However, Congress has not remained silent about the right of appeal in this matter.

III. *Finality and Non-Reviewability Under the Soil Bank Act*

In the case of the determination by the State and County Committees of the facts constituting the basis for compensation and the amount thereof, the statutes and regulations (set out in full in the appendix) provide that such determinations shall be final and not reviewable when determined in conformity with the applicable regulations. This court, by statutory mandate, thereby cannot here review either the facts which constituted the basis of compensation—the placing into production of 65 acres of noncropland, or the amount of compensation—computed to be zero, if they were "officially determined in conformity with applicable regulations prescribed by the Secretary." If not officially determined in conformity with the regulations, it is not clear that review may be had, but

this we leave. There is here no indication or allegation that the Committees did not conform with the procedural or substantive regulations. Although there may be alleged erroneous interpretations of the regulations and facts, the required conformity to the regulations does not require the Secretary or his authorized representatives to interpret and apply the facts and their own regulations in a manner co-equal to that of this or some other court. In the absence of a complete disregard or unjustifiable interpretation of the facts and the procedural or substantive regulations of the Secretary, which is not present here, this Court will follow the statutory mandate of Congress and refuse to review either the facts constituting the basis for payment or the amount thereof authorized under the Soil Bank Act.

The Court of Appeals in Mario Mercado E. Hijos v. Benson, 1956, 97 U.S. App.D.C. 298, 231 F.2d 251, 252, applied a similar statute of finality and non-reviewability under the Sugar Act (7 U.S.C.A. 1100 et seq.) so as to deny review of an administrative determination because of lack of jurisdiction. The court said:

> "We think this [statute of finality] makes it clear that Congress intended to preclude judicial review, not only of the Secretary's finding but of the hearing which led to it.
>
> "The Constitution does not require judicial review of either. 'When the claims created are against the United States, no remedy through the courts need be provided.' Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 569, 88 L.Ed. 733. It follows that no remedy through the courts need be provided to determine whether claims against the United States have been created. An administrative rejection of an alleged claim against the United States is conclusive when Congress has chosen to make it conclusive." At pages 252–253.

Although in United States v. Williams, 1929, 278 U.S. 255, 49 S.Ct. 97, 73 L.Ed. 314, where a statute provided that decisions of the Secretary were final and conclusive but the Court stated in dictum that a determination would not be final if "wholly without evidential support or wholly dependent upon a question of law or clearly arbitrary or capricious," (278 U.S. at pages 257–258, 49 S.Ct. at page 98) later cases where the statute provides for administrative finality and, in addition precludes review have held that review on questions of law, substantial evidence, and arbitrariness were prohibited. Barnett v. Hines, 1939, 70 App.D.C. 217, 105 F.2d 96, certiorari denied 308 U.S. 573, 60 S.Ct. 88, 84 L.Ed. 480. Although even this statute providing for finality and precluding review of an administrative decision may not act so as to deny review when there has been a deprivation of a constitutionally protected right (see Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567), it is controlling in the matter before us.

■ A final note must be added concerning the fact that plaintiff, prior to harvesting the 65 acres of new cropland, had no notice from any official that such harvest would affect his compensation under the agreement, even though the County Committee was alleged to have been aware of the situation, and had been unofficially led to believe that there would be no effect. Both the regulations and the agreement contained provisions that the placing of noncropland into production would result in a reduction of his compensation. Plaintiff's lack of notice arising from his misunderstanding or ignorance of the provisions in no way gives him standing before this court, regardless of how regrettable these circumstances might be. Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10.

■ It follows, therefore, that the motion to dismiss must be sustained. The Congress, which can prescribe the limits of this court's authority, can likewise limit judicial review. Plaintiff's action has in no manner defeated the purposes of the Soil Bank Act. Nevertheless, this court can only say to land-

owners similarly situated, that their remedy is to go to the Congress, for it is the Congress and not the courts that have denied the judicial review.

### APPENDIX
### SOIL BANK APPEAL STATUTES

"In the event that the Secretary determines that there has been a violation of the contract at any stage during the time such producer has control of the farm and that such violation is of such a substantial nature as to warrant termination of the contract, to forfeit all rights to payment * * * the provisions of section 1831(d) of this title shall apply to the termination of any contract hereunder." Soil Bank Act, 7 U.S.C.A. § 1821(a) (i).

"A contract shall not be terminated under paragraph (6) of subsection (a) unless the nature of the violation is such as to defeat or substantially impair the purposes of the contract. Whenever the State committee believes that there has been a violation which would warrant termination of a contract, the producer shall be given written notice thereof by registered mail or personal service, and the producer shall, if he requests such an opportunity within thirty days after the delivery or service of such notice, be given an opportunity to show cause, in an informal proceeding before the county committee under regulations promulgated by the Secretary, why the contract should not be terminated. If the producer does not request an opportunity to show cause why the contract should not be terminated within such thirty-day period, the determination of the State committee made in accordance with regulations of the Secretary shall be final and conclusive. If the producer within such thirty-day period requests an opportunity to show cause why the contract should not be terminated, the county committee, at the conclusion of the proceeding, shall submit a report, including its recommendations, to the State committee for a determination, on the basis of such report and such other information as is available to the State committee, as to whether there has been a violation which

would warrant termination of the contract. The producer shall be accorded the right, in accordance with regulations promulgated by the Secretary, to appear before the State committee in connection with the State committee's determination of the issue. The producer shall be given written notice by registered mail or personal service of the State committee's determination. If the producer feels aggrieved by such determination, he may obtain judicial review of such determination by filing a complaint with the United States district court for the district in which the land covered by the contract is located, within ninety days after the delivery or service of notice of such determination, requesting the court to set aside such determination. Service of process in such action shall be made in accordance with the rule for service of process upon the United States prescribed by the Rules of Civil Procedure for the United States District Courts. The copy of the summons and complaint required to be delivered to the officer or agency whose order is being attacked shall be sent to the chairman of the State committee. The action in the United States district court shall be a trial de novo to determine whether there has been a violation which would warrant termination of the contract. If the producer does not seek judicial review of the State committee's determination within the ninety-day period allowed therefor, the State committee's determination shall be final and conclusive. The terms 'county committee' and 'State committee' as used herein refer to the county and State committees established under section 8 of the Soil Conservation and Domestic Allotment Act, as amended." Soil Bank Act, 7 U.S.C.A. § 1831(d).

### SOIL BANK APPEAL REGULATION

"If any producer who requested a hearing before the county committee in accordance with this subpart feels aggrieved by a determination of the State Committee which requires the producer to forfeit all rights to compensation under an Acreage Reserve Agreement and to refund all compensation received

thereunder (any such violation shall be regarded as a violation which warrants termination of the agreement) or which provides for termination of conservation reserve contract, he may obtain judicial review pursuant to section 107(d) of the Soil Bank Act, by filing a complaint with the United States District Court for the district in which the land covered by the agreement or contract is located, within 90 days after the delivery of notice of such determination, requesting the court to set aside such determination. Service of process in such action shall be made in accordance with the rules for service of process upon the United States prescribed by the Rules of Civil Procedure for the United States District Court. The copy of the summons and complaint required to be delivered to the officer or agency whose order is being attacked shall be sent to the Chairman of the State Committee. The action in the United States District Court shall be a trial de novo to determine whether there has been a violation which would warrant termination of the acreage reserve Agreement or Conservation Reserve Contract. If the producer does not seek judicial review of the State Committee's determination within the 90 day period allowed therefor, the State Committee's determination shall be final and conclusive." 6 C.F.R. 485.280 as printed in 22 F.R. 2413 (April 11, 1957), as amended 22 F.R. 4779 (July 9, 1957).

### SOIL BANK FINALITY AND NON-REVIEWABILITY STATUTE

"The facts constituting the basis for any payment or compensation, or the amount thereof, authorized to be made under this chapter, when officially determined in conformity with applicable regulations prescribed by the Secretary, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. * * *" Soil Bank Act, 7 U.S.C.A. § 1809.

### SOIL BANK FINALITY AND NON-REVEWABILITY REGULATION

"The facts constituting the basis for any compensation, or the amount thereof,

under any agreement when officially determined in conformity with §§ 485.201 to 485.240, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government, except that the Act provides for judicial review in the case of the termination of an agreement." 6 C.F.R. 485.237, as printed in 21 F.R. 10458 (Dec. 29, 1956).