**Phillip PROSSER, Plaintiff,**

v.

**Earl BUTZ, Secretary of Agriculture, and the United States of America, et al., Defendants.**

**No. 73–C–29–CR.**

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

Dec. 19, 1974.

Carl R. Letz, Eldora, Iowa, for plaintiff.

Gary E. Wenell, Asst. U. S. Atty., Sioux City, Iowa, for defendants.

ORDER

McMANUS, Chief Judge.

The parties have submitted this matter for decision by the court upon the record herein, the briefs and the proposed findings and conclusions, filed by plaintiff September 3, 1974 and by defendants October 16, 1974.

In this action, plaintiff seeks redress of an alleged deprivation of due process as guaranteed by the Fifth Amendment during administrative proceedings conducted by the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture (USDA). Plaintiff operates a farm in Grundy County, Iowa, and during the 1972 crop year participated in

the USDA's Feed Grain Set-Aside Program, administered by ASCS. Under this program, plaintiff agreed to remove certain acres of land from their customary use in the production of feed grain and subject them to various governmental regulations in return for payments of money by USDA. Among the strictures thus placed on the use of plaintiff's set-aside land was a prohibition against grazing cattle during the five principal growing months of the period March 31–October 16 on the 27.1-acre tract involved here. This tract is part of the farm which the ASCS had labeled J–276.

From the record in this case, it appears that the relevant series of events began on June 19, 1972, when one of plaintiff's neighbors reported to the Grundy County ASC Committee Office that the tract had not been planted to Sudax as plaintiff had promised ASCS, but was weeds and cornstalks. In light of plaintiff's promised planting, the Committee took no action. The July 14, 1972, minutes of the Committee show that on June 26 the same unnamed neighbor reported that cattle were grazing on the tract and that he had also reported this violation on June 19. These dates are within the designated five-month principal growing period during which grazing was prohibited on the tract. The clerk who took the reports did not recall any mention by the neighbor of the grazing violation on June 19.

On July 11, plaintiff appeared at the Committee office in Grundy Center on another matter and was questioned by the Committee about the grazing. Seven farmers from plaintiff's vicinity had apparently signed a statement to the effect that cattle had grazed the set-aside acres for three weeks prior to June 27,

the date upon which the cattle were gotten out.[1] Plaintiff was informed of this and acknowledged that cattle had been in the set-aside land and that he had discovered this on June 19. He also stated that the grazing infraction might have existed for as long as two weeks prior to the 27th, but that his first actual notice of it had been on the 19th. Plaintiff was not informed prior to the July 11 meeting that the grazing charge would be brought up at the meeting, was not represented by counsel, had no opportunity to present evidence as to the nature and extent of the violation beyond his own contemporaneous verbal statements, and was denied access to the petition and the names of the signatories.

On July 14 the Committee made an "initial determination" of the matter and assessed a penalty of $829.00 against plaintiff. Plaintiff was notified of this on July 17 and at that time was also notified of his right to request a "reconsideration" of the initial determination by the Committee. This plaintiff did, it was granted and the Committee affirmed its original decision. Plaintiff then appealed to the state ASC Committee, which affirmed the county Committee, and then to the Deputy Administrator for State and County Operations of the ASCS in Washington, D. C. The Deputy Administrator reduced plaintiff's penalty by half, to $414.50. This exhausted plaintiff's administrative remedies and the instant suit followed.

Against this background, the issues presented for decision are the following: (1) Does the due process clause of the Fifth Amendment mandate the availability of a panoply of procedural safeguards, including notice of the violation alleged, the right to a hearing and presentation of evidence, confrontation and

---

1. As the government notes, the gate to the tract was left open until July 11. However, in view of plaintiff's statement that he plowed this land completely by June 27 and to his knowledge the cattle were not upon it at any time thereafter, and the lack of any evidence that the cattle were grazing it after the 27th, it is sufficiently established that

the violation ended on June 27. At any rate, the violation penalized here has to do with "grazing" rather than mere presence of animals on diverted acres. There is no dispute that the land was plowed on the 27th, and as plowed land cannot be "grazed," the violation could not have persisted after that date.

cross-examination of witnesses, and the right to representation by counsel, to one accused of an infraction of a USDA regulation which may result in an administratively-imposed monetary penalty?; (2) Specifically, was the statement signed by plaintiff's seven anonymous neighbors (the petition) used in the administrative determination of plaintiff's penalty, and if so was due process violated by plaintiff's inability to confront and cross-examine the signers?; (3) Was the petition used to secure inculpatory admissions from plaintiff, and if so was due process thereby violated?

At the outset, it should be noted that the court has jurisdiction of this matter notwithstanding the language of 7 U.S. C. § 1385 to the effect that

> The facts constituting the basis for any payment under the . . . feed grain set-aside programs . . ., or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. . . .

▇▇ First, the review of administrative action necessarily undertaken in connection with this lawsuit is not review of the facts determined by the agency, but of the procedures employed in reaching the determination. Thus the statute's proscription of review is not applicable here. Second, statutory language making administrative action "final and conclusive" cannot preclude judicial review where such action is alleged to infringe constitutional rights. Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953).

▇ It is the court's view that the procedures employed by the county Committee in reaching the penalty determination involved here were constitutionally insufficient. This is so whether the meeting between plaintiff and the Committee on July 11 be viewed as adjudica-

tory in nature, in which case Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), is inapplicable, or as an investigative proceeding to which *Hannah* would apply. *Hannah* held that the procedural safeguards required by the Constitution in administrative adjudications, such as the rights to counsel, notice of and hearing on specific charges, confrontation and cross-examination of adverse witnesses, and presentation of evidence, were not necessary where the proceeding was investigative in nature. The reasons for this are obvious and were stated at length in *Hannah*.

Here, however, even if the July 11 meeting is characterized as purely investigatory and therefore proper in itself, due process is violated by the Committee's failure to accord plaintiff any adjudicatory hearing whatsoever prior to the imposition of a rather heavy penalty upon him. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), is the principal case in this area. *Goldberg* held that (1) the plaintiffs, recipients of welfare payments, were statutorily entitled to the payments and that therefore procedural due process considerations were applicable to the termination of such benefits, (2) that the interests of both plaintiffs and the state itself in the plaintiffs' uninterrupted receipt of public assistance outweighed the state's competing interest in minimizing its fiscal and administrative burdens, and (3) that a pre-termination evidentiary hearing, attended by notice, presentation of evidence and argument, confrontation of adverse witnesses, privately-retained counsel, and a statement of reasons and evidence relied upon by the impartial decisionmaker to support the determination, is necessary to provide constitutional due process. It is clear that under *Goldberg*, plaintiff here was denied a sufficient pre-penalty hearing.

▇ Plaintiff had contracted with the ASCS for the right to receive certain payments, in return for which

plaintiff agreed to withhold land from productive uses. This establishes the entitlement to a benefit necessary under *Goldberg* and requires that due process be observed in the denial of any of such benefits.

The balance of interests also indicates that a hearing be had in the instant situation. The plaintiff has an immediate interest in securing the full payments for which he has contracted, and the government has an interest in seeing to the faithful performance of its contracts and the encouragement of reliance upon and confidence in such contracts by its citizens in the future. The government also, of course, has interests in paying out only such amounts as it is fairly required to do by the contract and in lightening its administrative burden whenever possible. Though these latter concerns are outweighed by the former, the *Goldberg*-type hearing necessary in the instant situation will be structured with a view to informality, to provide for the least possible detriment to these interests consistent with the Constitution.

█ Due process entitles plaintiff to the following in the instant situation: (1) notice of the specific charges or allegations at a time reasonably prior to the hearing in order to allow preparation of a defense; (2) right to retain private counsel and be represented by such counsel at a hearing; (3) right to present a reasonable quantum of argument and evidence at a hearing on the charges; (4) right to confront and cross-examine adverse witnesses at the hearing; (5) a brief written statement of reasons and evidence relied upon to support the determination of (6) an impartial adjudicative body.

While it is axiomatic that the elements of due process vary with the situation and the due process clause does not guarantee any unchanging forms, Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930), the "fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature" mandate a hearing in this case with the safeguards stated above. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938). Especially is this true where, as here, "the evidence consists of the testimony of individuals whose memory might be faulty . . . or persons motivated by malice, vindictiveness . . . or jealousy." Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

The availability here of an extensive administrative appeal process does not remedy the due process deficiency. None of the appellate determinations are de novo, and thus the denial of plaintiff's procedural rights is perpetuated through the appeal process. Review, however often repeated, of a determination arrived at by unconstitutional procedure cannot correct the defect unless the review itself includes the requisite procedural safeguards. This is not the case here.

As is implicit in the foregoing discussion, it is the court's view that the oral statements of plaintiff's unnamed neighbor made in the Committee office and the petition signed by this and six other unnamed individuals were major factors underlying the penalty determination. The only other evidence before the Committee relating to the grazing violation was plaintiff's own statement on the matter. This by itself would not appear to support as severe a penalty as was initially imposed upon plaintiff, and thus the court is compelled to infer that the third-party statements and petition served as the basis of the Committee's decision.

█ Plaintiff's inability to confront either the maker of the statement or the signers of the petition is a clear violation of due process under *Goldberg, Morgan, Greene* and *Hannah,* all supra. This confrontation must be allowed in any hearing to be held in this matter.

In light of the court's disposition of these issues, it is not necessary to decide

whether the petition was improperly used to elicit admissions from plaintiff.

It is therefore

Ordered

1. The penalty imposed upon plaintiff by the county Committee and reduced by the ASCS Deputy Administrator is voided;

2. This matter is remanded to the county Committee for Grundy County for proceedings consistent with this Order.