**STARRH & STARRH FARMS, etc., et al., Plaintiffs,**

v.

**Robert CUMMINGS, et al., Defendants.**

**No. CV F 83–129–EDP.**

United States District Court, E.D. California.

April 25, 1983.

James R. Parker, Jr., William C. Kuhs, Kuhs & Parker, Bakersfield, Cal., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Donald B. Ayer, U.S. Atty., Sacramento, Cal., Neil H. Koslowe, Sp. Litigation Counsel, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

PRICE, District Judge.

The plaintiffs are owners and operators of farm land which has current Upland Cotton Farm Acreage base. All of the farms in question are situate in Kern County, and fall under the jurisdiction of the Kern County Agricultural Stabilization and Conservation Service office.

The defendants Cummings, Creetol and Page are members of the Agricultural Stabilization and Conservation Service County Committee for Kern County; Everett Rank is the Administrator of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture, and the Commodity Credit Corporation is a corporation created by federal statute as an instrumentality to implement certain of the commodity credit services of the United States Department of Agriculture;

and John Block is the Secretary of the United States Department of Agriculture.

Plaintiffs' complaint seeks mandamus relief "compelling the defendants, and each of them, to accept and approve the whole base bids from operators and producers in Kern County who now desire to participate in the whole base bid program up to, but not in excess of, the eligible acreage within Kern County, by adding to the otherwise available acreage an amount equal to forty-five percent (45%) of 19,821.2 acres."

## FACTUAL BACKGROUND

On Wednesday, January 12, 1983, in Volume 46, No. 8, of the Federal Register, the Secretary published the interim rules for the Payment In Kind (hereinafter PIK) program for additional diversion of the 1983 crops of wheat, corn, green sorghum, rice and upland cotton. The need for the program was stated by the Secretary to be:

Acreage reduction and land diversion programs have already been instituted for the 1983 crops of wheat, feed grains, upland cotton and rice under provisions of the Agricultural Act of 1949, as amended. Producers participating in those programs will reduce planted acreage for wheat by at least 20%, and for rice by at least 20%. Even with these programs the supply of these commodities will greatly exceed demand. Record production coupled with a weak worldwide demand for these commodities due to the global recession and severe financial problems of some of our major foreign customers has created undesirable surpluses. Accordingly, the Department has determined that the diversion of additional acreage from the production of such crops is necessary to adjust the total national acreage of such commodities to desirable goals and that producers should be compensated by receipt of like commodities.[1]

---

1. Though not articulated, the restoration of a level of economic prosperity to the hard-pressed farming industry undoubtedly provided some motivation for the introduction of this program. Indeed a popular newspaper columnist in the San Francisco Bay Area recently reported the sighting of a 1983 luxury automobile bearing personalized license plates "PIK 83."

Historically, the acreage limitation and other programs of the Department of Agriculture are administered on a county-by-county basis. The Agricultural Stabilization and Conservation Service (hereinafter ASCS) County Committee of each county is the body through which the programs are administered. Extensive regulations have been developed in Title 7 of the Code of Federal Regulations (hereinafter CFR). Title 7, CFR consists of sixteen volumes.

The base unit for the purposes of administering the acreage limitation programs of which PIK is an extension is the "farm." 7 CFR § 719.3, entitled "Farm Constitution," instructs the local committee how to constitute a farm for purposes of administering these acts. Subsection (c) of 7 CFR § 719.3, provides as follows:

(c) *Location of farm for administrative purposes.*

(1) If all land in the farm is located in one county, the farm shall be administratively located in such county.

(2) If the land in the farm is located in more than one county, the farm shall be administratively located in either of such counties as the county committees and the farm operator agree. If no agreement can be reached, the farm shall be administratively located in the county (i) where the principal dwelling is situated, or (ii) where the major portion of the farm is located if there is no dwelling.

The J.G. Boswell Company is one of the largest growers, if not the largest, of upland cotton in the United States. Its upland cotton base totals 85,480.5 acres. If the base were attributed counties in which the land is situate, using a history method of division, the base would be divided as follows: Kings County, 49,879.3 acres; Kern County, 19,821.2 acres; Fresno County, 15,780.0 acres (See Exhibit B to plaintiffs' complaint).

The ASCS Office of Kern County formerly administered crop allotment programs that involved Boswell. In 1968 or 1969, the Boswell executives requested that the administration of the Boswell Ranches as constituted for ASCS purposes be moved to Kings County, and this transfer was made. This transfer was approved in accordance with 7 CFR § 719.3. There was no evidence that any objection was made at the time the transfer was undertaken.

Early this year, the plaintiffs and other interested parties in Kern County alerted the appropriate ASCS officers, both in the State of California and national headquarters, as to the detrimental effect the loss of Boswell's current acreage would have on the ability of the Kern County farmers to qualify for PIK contracts. After giving the matter some consideration, appropriate officials charged with the administration of the program determined that Boswell's entire upland cotton base acreage would be allocated to Kings County for the purposes of the PIK program.[2]

Ultimately, the Secretary decided that only 45% of the upland cotton acreage base in any one county would be eligible for inclusion in PIK program contracts. This meant, in effect, that Kern County upland cotton growers were denied 8,919.45 acres of upland cotton base.

The bidding process which was established was roughly as follows:

The bid for the contract containing the lowest percentage of the particular farm's available base was accepted first, and the amount of acreage deducted from the total acreage in the county available for PIK contracts. The next lowest bid or bids were accepted until all of the available acreage for contracts in the county was exhausted.

In Kern County, according to the evidence, 130 bids were accepted from qualified farmers eligible for inclusion in the

---

**2.** Richard Bressler, the manager of the Kern County ASCS office indicated that his office administered acreage allotment programs in counties other than Kern County pursuant to the provisions of 7 CFR § 719.3. The record was not developed, however, as to the amount of such acreage as it pertained to the upland cotton PIK program. The government did not defend the case on the theory that there was substantially a quantity of acreage arrived at by reason of this fact, nor does the court determine the instant litigation on any such theory.

PIK program. However, because of the acreage limitations imposed by the Secretary upon the program, only 44 bids were approved for contracts, including one of the farms owned by the plaintiff, Don Loveless, Farm No. 8775. Ninety-six bids were accepted but not approved because the available acreage had been exhausted by the 44 lower bids. Had the Boswell cotton lands situate in Kern County been available for PIK acreage allocation in Kern County, an additional 61 contracts would have been approved from such additional acreage. Coincidentally, it should be noted that among those 61 potential contracts, all of the remaining acreage of the plaintiff Loveless as well as Starrh & Starrh Farms would have been approved for participation in the PIK program. However, the land of the plaintiff Bergman & Isaacs would still not have been eligible for inclusion.

Finally, all of the approved bids in Kings County were accepted and would have been so, even if the Boswell Kern County acreage had been allocated to Kern County.

## THE PLAINTIFFS' CONTENTIONS

Plaintiffs' arguments raise the following legal issues:

1. Is the attribution of all of the upland cotton base of Boswell to Kings County for purposes of the PIK program arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

2. Is the attribution of all of the upland cotton base to Kings County for purposes of the PIK program patently, arbitrarily, and utterly lacking in rational justification, in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution?

A. *The Arbitrary, Capricious, Abuse of Discretion, and Not in Accordance with Law Issue.*

Essentially, plaintiffs argue that the Secretary's promulgated rules indicated that the PIK program was to be implemented on a county-by-county basis rather than a farm-by-farm basis. They rely on the following quotations from 48 Fed.Reg. 1476

(Jan. 12, 1983), and 48 Fed.Reg. 1479 (Jan. 12, 1983).

The Department will determine the number of acres for which bids will be accepted for each commodity in each county, based on particular supply/demand situations, conditions in local communities, and other relevant factors. In no event will more than 50 percent of the total acreage bases for a commodity in a county be taken out of production under this and previously announced 1983 acreage reduction and cash land diversion programs. [48 Fed.Reg. 1476, (Jan. 12, 1983)]

. . . The Department will establish the number of acres for which bids will be accepted for each commodity in each county, based on particular supply/demand situations, conditions in local communities, and other relevant factors. [48 Fed.Reg. 1479 (Jan. 12, 1983)]

The plaintiff fails to note that the publication he cites was the interim rule promulgated by the Secretary upon which public comment was invited. Plaintiffs and others did call this matter to the attention of the Secretary and his subordinates.

The government's position that the new regulations, and particularly 7 CFR § 770.5, designate the appropriate county ASCS office as the administrative unit which will represent the department in administering the program. This, the government argues, incorporates by reference all of 7 CFR part 719 which, since 1964, has been the basis for the administration of the various agricultural programs being conducted pursuant to the authority of the Agricultural Act of 1949, as amended, the Commodity Credit Corporation Charter Act, and the Agriculture and Food Act of 1981. The administrative history of these provisions indicates a multitude of programs that are administered through the local county ASCS pursuant to the provisions of 7 CFR, part 719. In view of the long history of this administrative procedure, the Court cannot believe that the Secretary, by the use of the language quoted, intended to revise and re-

vamp the entire administrative apparatus of the Agricultural department which has been in place since 1964. Indeed, the Boswell ranches have been thus administered for purposes of crop allotments, and soil conservation programs for the last four to five years by Kings County!

B. *Plaintiffs' Fifth Amendment Issue.* Plaintiffs state:

In the case at bar, the effect of the PIK rules, as interpreted by the defendants, is to attribute upland cotton base acreage to Kings County to the detriment of operators, and producers in Fresno and Kern County. We submit that a discrimination between the operators and producers in Kings County on the one hand, and operators and producers in Kern on the other hand, bears no rational relation to the goal of the PIK program, namely, to improve the total farm economy, lessen storage space problems, and lower the producers production costs.

First of all, the plaintiffs' argument is not supported by the evidence before the Court.

The plaintiff offered a stipulation, in which the defendants joined, that all of the persons who bid for contracts in Kings and Fresno County were awarded contracts.

Second, at the request of the Court, Mr. Richard Bressler, who is in charge of the Kern County office, made a computation for the court, of the additional contracts which could have been awarded had the Boswell acreage situate in Kern County been used to compute the Kern County quota. As previously mentioned, 61 additional contracts could have been awarded had the Boswell acreage been available, however, 35 applicants still would have been unsuccessful because of insufficient acreage in the total Kern County base.

Finally, the plaintiffs' argument misses its constitutional target for the simple reason that the PIK program was never intended or designed to benefit all farmers who conceivably desired to participate. In the same interim rules, so heavily relied upon by plaintiffs' counsel, the Secretary states that: "In no event, will more than 50% of the total acreage bases for a commodity in a county be taken out of production under this and the previously announced 1983 acreage reduction and cash land diversion programs." Accordingly, it was mathematically possible, if not probable, that there would be unsuccessful bidders in several counties and for several commodities.

Finally, plaintiffs' reliance on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, and *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435, is not well placed.

Both cases, by their very terms, apply only to *social welfare* programs. The PIK program is not a social welfare program.

Second, there was no classification that excluded the plaintiffs, it was the acreage limitation which excluded the plaintiffs. Indeed, as previously pointed out, the plaintiff Bergman & Isaacs could not have been a successful bidder on the basis of the bid submitted even if the sought-after land were included in the Kern County allotments. Accordingly,

IT IS THE ORDER OF THE COURT THAT the plaintiffs request for an order in the nature of mandamus be, and the same is hereby DENIED.