**Marvin C. WESTCOTT, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, John Block, Secretary of the United States Department of Agriculture, Bruce Gustafson, Vinston D. Carlson, and Charles Leff, Defendants.**

No. CV83–L–474.

United States District Court, D. Nebraska.

Nov. 1, 1984.

Michael Johanns, Lincoln, for plaintiff.

Theodore Grossman, Dept. of Justice, Washington, D.C., for defendants.

URBOM, Chief Judge.

According to the record before me, the plaintiff, Marvin C. Westcott, owns farms in Nuckolls and Phelps counties in Nebraska. He made an application to the Agricultural Stabilization and Conservation Services Committees of these two counties to combine his farms as one farming unit; the combination was approved by both county ASCS committees in February of 1983. On March 16, 1983, the Phelps county ASCS committee reviewed the combination and again approved it, but on March 24, 1983, upon further review, it concluded that the farms must be decombined. At about the same time, the Nuckolls county ASCS committee made the same decision. The plaintiff appealed to the Nebraska State ASCS committee, which determined that the farms would remain divided for the 1983 program. By a letter dated April 14, 1983, the state committee informed the plaintiff that:

> "... combination of the farms represents an advantage to meet conservation use requirements without contributing an equivalent reduction in production. It also appears that prior operators on two of the farms were changed to share producers for the purpose of meeting single farm operator rules for combination of farms. The combination of these farms is not in the best interest of the program."

> (part of filing 18)

The plaintiff then appealed the findings of the state committee to the Deputy Administrator, State and County Operations, of the United States Department of Agriculture. On May 5, 1983, the deputy administrator informed the plaintiff that the decision of the state committee was affirmed, thus ending the appeal rights under 7 C.F.R. Part 780. This was the final determination of the Department of Agriculture.

The plaintiff subsequently filed this lawsuit, challenging the decombination of his farms. He is seeking relief in the form of

an injunction preventing the defendants from enforcing the provisions of two amendments to the handbook used by the county ASCS committees, a judgment directing the defendants to combine his farmland into one farming unit, and money damages.

The defendants have filed a motion to dismiss or in the alternative for summary judgment, filing 18.

### I. Reviewability

■ The defendants claim that 7 U.S.C. § 1385 precludes judicial review of the determination of the committees and the deputy administrator that the plaintiff's farms should remain decombined. Section 1385 provides:

"The facts constituting the basis for ... any payment under the wheat, feed grain, upland cotton, and rice programs authorized by the Agricultural Act of 1949 and this chapter, any ... price support operation, or the amount thereof, when determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government."

The cases cited by the defendants, however, show that this section is not a complete bar to judicial review. In *Gross v. United States*, 505 F.2d 1271 (Ct.Cl.1974), the court interpreted this section to mean that the factual determinations of an agency are not subject to review by the judiciary and that "the decision of the agency based on such factual determinations are also entitled to finality and are not subject to judicial review, *except* as to questions of law, or allegations and proof by the plaintiff that such decisions were arbitrary or capricious." *Id.*, at 1279 (emphasis added). In *Elliott v. United States*, 179 F.Supp. 758, 759 (U.S.D.C.Neb.1959), another case cited by the defendants, the court was concerned with the Soil Bank Act, 7 U.S.C. §§ 1801 et seq. Tit. 7 U.S.C. § 1809 contained provisions and language limiting review by other officers and agencies of the government that were very similar to 7

U.S.C. § 1385. In interpreting this provision the court stated that it would follow the directions of Congress and "refuse to review either the facts constituting the basis for payment or the amount thereof authorized under the Soil Bank Act." *Id.*, at 762. The court went on to note an exception to the no-review provision when there is a deprivation of constitutional rights. *Id.*; accord, *Prosser v. Butz*, 389 F.Supp. 1002, 1005 (U.S.D.C.Ia.1974). Because the plaintiff has alleged that the acts of the individual ASCS committee members were arbitrary and capricious and that there has been a deprivation of Fifth Amendment rights, I conclude that § 1385 does not prevent judicial review of this case.

The *Gross* and *Elliott* cases are significant, because they stand for the proposition that § 1385 does not prevent an agency from reviewing its own decisions. *Gross*, supra, at 1278; *Elliott*, supra. This supports my conclusion that the final decision of the department in this case is that the farms should remain separate. This is contrary to the plaintiff's claim that the decision of the county ASCS committees to combine the farms is the final decision that should be upheld unless one of the conditions of § C.F.R. § 719.3(d) is met, thus requiring a reconstitution of the combined farms.

### II. Department of Agriculture as a Party

■ The defendants contend that the Department of Agriculture is not a proper party to this lawsuit, because it is not a statutory entity, i.e., Congress has not given it the authority to sue or be sued. The clearest statement of this prohibition against suing the Department of Agriculture is found in *United States Department of Agriculture v. Hunter*, 171 F.2d 793 (C.A. 5th Cir.1949). The defendants cite *North Dakota-Montana Wheat Growers' Ass'n v. United States*, 66 F.2d 573 (C.A. 8th Cir.), cert. denied, 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061 (1933), showing that this is the rule of law in the Eighth Circuit. The plaintiff has failed to rebut the assertion that the Department of Agriculture

cannot be sued, and I have found no authority contrary to that relied upon by the defendants. The Department of Agriculture will be dismissed as a defendant.

However, the Secretary is a person and "if he by affirmative act exceeds his lawful authority or threatens to do so, to the injury of established rights, he may be enjoined, for in such circumstances he is not truly representing the Government." *United States Department of Agriculture v. Hunter,* supra, at 795. The status of the claims against the Secretary and the other individual defendants is discussed below.

### III. Sovereign Immunity

The defendants allege that the doctrine of sovereign immunity is a bar to this lawsuit.

> "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)

The terms of congressional consent to the United States' being sued "must be strictly observed and exceptions thereto are not to be implied." *Testan,* supra, 424 U.S. at 399, 96 S.Ct. at 953; *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

The defendants allege that the present lawsuit is against the property of the Commodity Credit Corporation and that the real parties in interest are the Commodity Credit Corporation and the United States. The basis of this allegation is that any PIK payments are to be made out of the Commodity Credit Corporation's inventories. 7 C.F.R. § 770.3. The Commodity Credit Corporation Charter Act provides that the CCC:

> "May sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property ... Any suit by or against the

United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of [this subsection] to the same extent as though such suit were by or against the Corporation ..."

15 U.S.C. § 714b(c)

The defendants claim that this language prevents any injunction from issuing against the Commodity Credit Corporation or the United States as the real party in interest to the lawsuit.

A case dealing with similar statutory language is *United States v. Mel's Lockers, Inc.,* 346 F.2d 168 (C.A. 9th Cir.1965), where it was held that the Small Business Administration was an unincorporated agency of the federal government and entitled to full sovereign immunity unless waived by Congress. The applicable statute provided that the administrator of the Small Business Administration may "sue and be sued ... but no attachment, injunction, garnishment or other similar process, mesne or final, shall be issued against the Administrator or his property." 15 U.S.C. § 634(b). The court stated that "this language is too clear for misunderstanding that there is no waiver by Congress as to injunction suits." *Id.,* at 170.

█ It is the plaintiff's contention that the defendants were acting beyond the scope of their authority and that, therefore, the doctrine of sovereign immunity does not apply even in the absence of a waiver. *Berends v. Butz,* 357 F.Supp. 143, 149 (U.S. D.C.Minn.1973). His argument is that the Department of Agriculture promulgated new "rules" in the form of amendments to the handbook used by the county committees, without complying with the notice and comment provisions of the Administrative Procedure Act. The amendments at issue are CM-7 and CM-10. (Exhibits H and I of filing 1) To determine whether these amendments are subject to the notice and comment provisions of the APA it first must be determined whether they are substantive rules or merely interpretations of such rules and therefore excluded from the

notice and comment requirements. A finding that these amendments are rules is the linchpin of the plaintiff's case: if the amendments are merely interpretative rules, the notice and comment provisions are inapplicable, the defendants have not acted beyond the scope of their authority, and injunctive suits are barred.

The Administrative Procedure Act at 5 U.S.C. § 552 provides:

"(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

\*   \*   \*   \*   \*   \*

(4)(A) In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, ..."

Tit. 5 U.S.C. § 553 concerns rule making by administrative agencies of the government. Section 553(b) provides:

"General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law ...

\*   \*   \*   \*   \*   \*

"Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

Section 553(c) requires that agencies give interested persons an opportunity to present to the agency their views on the proposed rule. This is generally referred to as the comment requirement.

To determine whether the amendments were interpretative of previous rules and are therefore exempt from the notice and comment provisions of the APA, one must first look at the regulations they were supposedly interpreting. The regulations for the Payment In Kind Program are set out in 7 C.F.R. Part 770 (1984). The regulation at § 770.2 requires that a farmer "comply with all of the requirements of any other acreage reduction or paid diversion program established by the Department for any commodity included in the contract." 7 C.F.R. Part 719, concerning the constitution and reconstitution of farms, applies to "any program administered by the Agricultural Stabilization and Conservation Service through State and county committees." 7 C.F.R. § 719.2. Part 719 clearly applies to the PIK program. Section 719.-3(b) provides:

"... [A] farm shall include all land operated by one person as a single farming

**356**

unit except that it shall not include land under any of the following conditions:

\* \* \* \* \* \*

(6) Land constituting a farm which is declared ineligible to participate in a program under the regulations governing the program."

7 C.F.R. § 719.3(a) provides:

"Land which has been properly constituted under prior regulations shall remain so constituted until a reconstitution is required under paragraph (d) of this section"

Section 770.2 requires compliance with the Paid Land Diversion Program, described in 7 C.F.R. Part 713, as a condition of participating in the PIK program. Section 713.22 (1983) provides:

"(b) A producer who is determined by the State committee, or the county committee with the approval of the State committee, to have knowingly (1) adopted any scheme or device which tends to defeat the purpose of the program ... shall refund to the Commodity Credit Corporation all payments received by such producer with respect to the program."

The deputy administrator delineated the purpose of the PIK program in his May 5, 1983, letter denying the plaintiff's appeal of the state ASCS committee's decision which affirmed the decombination of the farms. He said:

"The basic concept of the production adjustment program, including the voluntary payment-in-kind (PIK) program, is to reduce production of program commodities in order to bring supplies more in line with demand.... For the program to be effective, we believe the conservation use acreage must be almost equally productive to the land remaining to be cropped on the farm. In this respect, we do not believe it to be in the best interests of the PIK program to permit farm combinations which would increase the potential of having less productive land designated as conservation use acreage."

The plaintiff does not dispute that the reduction of production is one goal of the PIK program. Plaintiff's brief, p. 3.

The plaintiff has two farms that are all irrigated acreage base and one tract that is all dryland acreage base; the dryland farm is in a different county than the two others. The defendants claim that if the farms were combined as one farming unit, the plaintiff could designate more dryland acreage for conservation use purposes and retain a larger percentage of the irrigated acreage for production, allowing him to produce more grain on the same number of producing acres than if the farms remained decombined. The defendants claim that combining the tracts would be counterproductive to the purpose of PIK, which is to reduce production.

This brings us to the consideration of CM–7 and CM–10. CM–7, dated June 1, 1983, stated that reconstitutions should be denied by county ASCS committees if they determine (1) that the reconstitution was requested in anticipation of or because of the PIK program and (2) that the reconstitution is not in the best interest of the PIK program. (Exhibit H to filing 1). At page 2 of this document the county committees were instructed to consider all relevant factors in determining what was in the best interest of the program, including the types of crops raised on the tracts, the productive capability of the tracts (the ratio of dryland to irrigated land or bottom land to upland, etc.), and the farmer's intention regarding the designation of land for conservation purposes.

CM–10 (Exhibit I of filing 1) ordered the county ASCS committees to review all reconstitutions of farms for the 1983 crop season, considering the criteria of CM–7. The county committees were directed to:

"B Withdraw the approval of any reconstitutions that:

1 Appear to be devices to meet requirements for conserving use under the acreage reduction or PIK programs without contributing an equivalent reduction in production.

2 Appear to be devices that allow producers to realize windfalls in the form of unwarranted program payments.

3 Appear to be any other scheme or device that tends to defeat the purpose or reduce the effectiveness of the acreage reduction or PIK programs, and are therefore contrary to the best interests of the programs."

The defendants allege that the contents of the two amendments are interpretations of the regulations contained in the Code of Federal Regulations. A review of some of the pertinent regulations is helpful in determining whether this is true. Some general guidelines for the county ASCS committees to use in determining what land constitutes a farm are set out in 7 C.F.R. § 719.4; such factors as ownership, whether the land is farmed as a single farming unit, and who actually controls the farming operation are listed. These do not purport to be an exhaustive list of the factors to be considered. Section 713.22(b) provides that farmers who adopt a "scheme or device" to defeat the purpose of a program must return any money paid to them under that program. The purpose of Parts 713 and 770 of the Code of Federal Regulations is to reduce production of specified crops. I find that CM–7 and CM–10 are merely interpretative of these regulations and are compatible with the broad purposes of the PIK program. The portion of CM–10 set out above makes it clear that this amendment tracked the language of some of the regulations mentioned in this paragraph. It is also clear that CM–10 was giving examples to clarify CM–7's admonition to avoid reconstitutions that are not in the best interest of the PIK program.

█ The plaintiff claims that there is a genuine issue of fact as to whether CM–7 and CM–10 are interpretative or substantive rules. Plaintiff's brief, p. 15. Actually, it is a question of law for the court to decide.

The plaintiff argues that CM–7 and CM–10 are regulations that were promulgated in violation of the APA, citing *Texaco, Inc. v. Federal Power Commission*, 412 F.2d 740 (C.A. 3rd Cir.1969), and *Pharmaceutical Manufacturers Ass'n v. Finch*, 307 F.Supp. 858 (U.S.D.C.Del.1970), for the proposition that because the directives had a substantial impact upon him, they therefore were regulations that must meet the procedural requirements of the APA. The *Texaco* case is easily distinguishable from the present case. In *Texaco* a commission issued an order that specifically stated that it amended a section of the Code of Federal Regulation; the issue was whether the notice and hearing provisions of the APA could be dispensed with as unnecessary under 5 U.S.C. § 535(b)(B). This provision of the APA is not at issue here.

In the second case cited by the plaintiff, the court stated that regardless of the label attached by the agency, "when a proposed regulation of general applicability has a substantial impact on the regulated industry, or an important class of members ... notice and an opportunity for comment should first be provided." *Pharmaceutical Manufacturers Ass'n v. Finch*, supra, at 863. In the *Finch* case the FDA published new regulations in the Federal Register that were effective without any notice and comment opportunity. The regulations required in specific detail that certain types of clinical evidence be submitted by the drug manufacturers to show the effectiveness of drugs that were permitted on the market between 1938 and 1962. Proof of the effectiveness of those drugs was not previously required. If such evidence was not submitted, the drugs would be subject to summary removal from the market by the FDA. The court found the new regulations to be "pervasive in their scope and have an immediate and substantial impact on the way" the manufacturers conduct their everyday business. *Id.*, at 864. The effect of the regulations did not stop with the manufacturers but extended to prescribing physicians and patients as well. The court held that because of the impact of the regulations upon the industry, the FDA had to comply with the notice and comment provisions of the APA before the rules could be effective.

The *Finch* case, too, is distinguishable. There, the FDA was imposing a regulation that had previously been applied only to new drug applications made in the year 1962 or later, on drugs that had been approved for sale under a prior and more lenient standard. The court said that this was a heavy burden to impose upon drug manufacturers and it therefore had to be done with notice and an opportunity for comment, giving as one reason the allegation that there were not enough qualified personnel in the country to do all of the testing necessary to prevent summary removal of these drugs from the market. This was especially true because researchers did not want to spend their time testing drugs whose effectiveness was not questioned by the medical profession. This is quite different from the case here, where the plaintiff is claiming that the amendments to the handbook had a significant impact because they affected the combination of *his* farms. I do not believe this is the type of impact the court had in mind in *Finch* when it concluded that the "substantial impact on the regulated industry" made the regulation subject to the notice and comment provisions of the APA.

In *Berends v. Butz*, 357 F.Supp. 143, 154 (U.S.D.C.Minn.1973), the court agreed with the *Finch* court that a directive that has a substantial impact upon those regulated is a rule and therefore the notice and comment provisions of the APA must be followed. *Berends*, however, also is distinguishable. In *Berends* the plaintiffs were challenging only ministerial acts of the Secretary, not discretionary acts. The Secretary had exercised his discretion in designating certain areas as eligible for emergency loans. The effect of the designation by statute and regulation was that "emergency loans *will* be made available in the counties so designated." *Id.*, at 152 (emphasis by the court). Subsequently, the Secretary directed that emergency loan applications would no longer be accepted more than sixty days after the designation. Because of the timing, the effect of this directive was to prevent, without notice, the application for emergency loans in des-

ignated areas. A provision of the act at issue stated: "The benefits provided under this section shall be applicable to all loans qualifying hereunder." P.L. 92–385, § 5. The benefit referred to was the availability of emergency loan funds that were unavailable commercially. The court ruled that the Secretary "must accept loan applications and consider them." *Id.*, at 150. The court found that accepting loan applications was mandated by the statutes and was not within the discretion of the Secretary. It is significant that the court did not rule that the loans had to be granted, but only that the applications had to be accepted and considered.

It is the mandatory language in the above statutes and regulations that distinguishes *Berends* from the present case. The plaintiff here is claiming that his farms must be combined. There is, however, no statutory language mandating that farms shall be combined when they are in different counties and one is all dryland acreage base and the other two are all irrigated acreage base.

I conclude that CM–7 and CM–10 are merely interpretative rules of regulations contained in the Code of Federal Regulations and as such are exempt from the notice and comment provisions of the Administrative Procedure Act. 5 U.S.C. § 553(b).

■ Government officials are immune to damage suits for discretionary acts done in the course of their official duties. *Barr v. Mateo*, 360 F.2d 564 (1959). If the action taken is "within the outer permimeter" of the defendants' line of duty, then the privilege of governmental immunity applies. *Id.*, at 575. The Eighth Circuit Court of Appeals has applied governmental immunity to members of county ASCS committees in *Gross v. Sederstrom*, 429 F.2d 96 (C.A. 8th Cir.1970), noting that the ASCS committees are given "broad responsibility for carrying out various government farm programs." *Id.*, at 99; 7 C.F.R. § 7.21. The decisions on farm combinations are within the discretion of the ASCS committees;

therefore, governmental immunity protects the committee members from suit for damages. Furthermore, the only decision that could be subject to review is the deputy administrator's final decision affirming the state ASCS committee's determination that the plaintiff's farms must remain separate. (Exhibit E to filing 1; 7 C.F.R. Part 780). The decisions of the county committees are not final. The concept of governmental immunity applies to the Secretary of the United States Department of Agriculture as well; because his actions were taken in the course of his duties, he also is immune from suit in this case.

### IV. Denial of Ability to Bid

■ In his brief the plaintiff argues that if he had known that his farms would not be allowed to be combined, he would have made a bid for 100 per cent participation in the PIK program on at least one of his tracts, contending that because the determination that the tracts could not be combined was made after the cutoff for bidding for 100 per cent participation, he was precluded from making such a bid. Even accepting these allegations as true, they state no cause of action: there is no constitutional entitlement to PIK benefits. *Starrh & Starrh Farms v. Cummings*, 562 F.Supp. 415, 419 (U.S.D.C.E.D.Cal. 1983). And, because bids are competitive for 100 per cent participation, even if a bid were made, there was no guarantee that it would have been accepted. 7 C.F.R. § 770.5. If what the plaintiff is asserting is that the government should be estopped from determining that his farms cannot be combined because government officials told him after oral inquiries that his tracts met the requirements for combination, this also fails to state a cause of action. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Leimbach v. Califano*, 596 F.2d 300 (C.A. 8th Cir.1979).

### V. Due Process

■ The plaintiff also contends that the committee members deprived him of due process of law, in violation of the Fifth Amendment, by not following the regulations in the Code of Federal Regulations and by following CM-7 and CM-10, which he alleges were not properly promulgated. I have ruled that CM-7 and CM-10 were interpretative rules and did not need to be published and subject to comment before being used by the ASCS committees. There is no property interest involved in this case to which the Fifth Amendment can attach. The mere fact that a government program exists does not give a person a property interest in participating in the program. *Berends v. Butz*, supra, at 151; *Simpkins v. Davidson*, 302 F.Supp. 456 (U.S.D.C.S.D.N.Y.1969). In fact, the function of the ASCS committees and the Department of Agriculture appeals process is to determine whether one is entitled to participate.

■ Furthermore, in making the determination, the county ASCS committees, the state ASCS committee, and the deputy administrator more than met the minimum due process requirements of the Fifth Amendment. It appears that the plaintiff may not have been informed of one of the county committee meetings at which his farms were discussed, but he was able to present his views at all levels of the agency's determination process.

I find that the Fifth Amendment claims are meritless and cannot be used to circumvent the governmental immunity afforded the defendants in this case.

### VI. Arbitrary and Capricious Conduct

■ The plaintiff has also alleged that the ASCS committee members acted in an arbitrary and capricious manner in determining that his farms could not be combined for purposes of the PIK program. As I pointed out earlier in this memorandum, the determination of the county committee is not a final decision of the Department of Agriculture, because the plaintiff appealed that decision; the final decision was that of the deputy administrator. In addition, the only evidence in the record to support an allegation of arbitrary and capricious conduct on the part of the committee members is that another person's tracts

were combined and that one of that person's tracts was dryland and the other was irrigated. According to the plaintiff, the explanation given him of the differences in the cases was that one of that other person's tracts had been inherited by him that year and it was believed that in the "normal sequence of events" he would have combined the tracts in the absence of any program. (Page 2 of plaintiff's "Facts & Background," a part of filing 18) The defendants, on the other hand, have shown that the ASCS committee members were performing a duty within their discretion in determining whether to approve the combination of the farms and that their decision was in conformance with the broad purposes of the PIK program, i.e., to reduce production of specific crops.

The defendants' motion to dismiss or for summary judgment will be granted as to all defendants.