**CITIZENS FOR FAIR UTILITY REGULATION, Petitioner,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION and the United States of America, Respondents.**

Nos. 89–4124, 89–4310.

United States Court of Appeals, Fifth Circuit.

April 12, 1990.

Richard Lee Griffin, Ft. Worth, Tex., for Citizens for Fair Utility Regulation.

Michael D. Kohn, Stephen M. Kohn, Kohn, Kohn & Colapinto, Washington, D.C., for intervenor Joseph J. Macktal, Jr.

Richard Thornburgh, Atty. Gen., U.S. Dept. of Justice, John Cordes, Charles E. Mullins, General Counsel, Janice E. Moore, Office of the General Counsel, U.S. N.R.C., Dirk D. Snel, Martin W. Matzen, U.S. Dept. of Justice, Washington, D.C., for U.S. Nuclear Regulatory Com'n.

George L. Edgar, Thomas A. Schmutz, Newman & Holtzinger, Washington, D.C., for intervenor Texas Utility Elec. Co.

Before WISDOM, JOHNSON and Duhé, Circuit Judges.

JOHNSON, Circuit Judge:

In early February 1990, this Court denied a motion to stay proceedings filed by Citizens For Fair Utility Regulation (CFUR). CFUR's motion requested that the issuance of an operating license for the Comanche Peak Nuclear Power Plant be stayed pending this Court's decision on the merits. Our denial was predicated on a determination that CFUR had failed to demonstrate a substantial likelihood of success on the merits of its claim that the Nuclear Regulatory Commission (NRC) erroneously denied CFUR's late-filed motion to intervene in the licensing proceedings. Texas Utilities Elec-

tric Co., et al. (Comanche Peak Steam Electric Station, Units 1 and 2), CLI–88–12, 28 NRC 605, 607 (1988) (hereinafter CLI–88–12); 10 C.F.R. §§ 2.714(a)(1)(i–v). We turn now, in this opinion, to address the merits of CFUR's claim.

## I. FACTS AND PROCEDURAL HISTORY

CFUR is a Tarrant County based public interest organization "representing a broad base of citizens whose primary concerns are safe, affordable and environmentally sound energy. Since its founding in 1976, CFUR has been dedicated to environmental and energy education." Petitioner's Brief at 5–6. In 1979, CFUR was granted intervenor status in Comanche Peak's licensing proceeding. At the same time, Citizens Association for Sound Energy (CASE) and Association of Communities for Reform Now (ACORN) were also granted intervenor status.[1] ACORN later withdrew from the proceedings in 1981. CFUR withdrew from the proceedings on April 2, 1982. The proceedings continued with CASE as the sole intervenor.

By 1984, the proceeding had resolved all contentions with the exception of one relating to Quality Control/Quality Assurance (QC/QA) in the construction of the plant. On June 28, 1988, CASE and TU Electric reached a settlement agreement terminating the existing proceedings.[2] Consequently, CASE, TU Electric, and the NRC staff submitted a joint motion to dismiss the proceedings as settled. On July 13, 1988, the Licensing Board held a public meeting. After receiving comments from the parties and interested members of the public, the Board issued an order dismissing the proceedings.

On August 11, 1988, CFUR filed a late petition before the Atomic Safety and Licensing Board seeking to intervene in the Comanche Peak proceedings. At the time of this filing, CFUR's petition was filed nine years out-of-time, six years after CFUR's voluntary withdrawal, and a month after the hearings had been dismissed. CFUR filed two supplements to its initial petition. In the first, CFUR alleged that Joseph J. Macktal, intervenor in the instant case, had expressed safety concerns but was prevented from raising them because of an illegal agreement between the Comanche Peak contractor, Brown & Root, and CASE attorneys.[3] In the second supplement, CFUR alleged that TU Electric had used certain materials in the construction of the station in violation of both the manufacturer's directions and the approved design of Comanche Peak.

On December 21, 1988, the NRC, concluding that CFUR's petition failed to satis-

---

1. The NRC provides a two-stage agency process for consideration of those aspects of licensing a nuclear power plant related to protecting public health, safety and the environment. 42 U.S.C. § 2011 *et seq.;* 42 U.S.C. § 4321 *et seq.* On February 28, 1978, Texas Utilities Electric Company (TU Electric), the owner of the Comanche Peak station, filed an application for a license to operate Comanche Peak. The Atomic Energy Act requires a hearing on a construction permit application but permits the NRC to issue an operating license in the absence of an adjudicatory hearing if one is not requested. An adjudicatory proceeding commences when the NRC publishes notice of proposed action in the Federal Register. The notice includes a time period during which interested persons may file a request for a hearing or file a petition for leave to intervene. 10 C.F.R. §§ 2.105(d); 2.714(a)(1). CFUR, CASE, and ACORN filed timely petitions to intervene.

2. CFUR's brief points out that this settlement marks the first time an intervenor (CASE) in a nuclear power plant licensing proceeding has received financial renumeration in the context of a settlement agreement.

3. On December 16, 1989, Macktal filed a Petition to Intervene in the CFUR proceeding on a limited issue concerning the nature of the settlement agreement. We note here that this issue has become moot. The NRC has withdrawn any comment on the legality of Macktal's settlement agreement and indicated that its decision to deny CFUR's petition was independent of the validity of that agreement. Memorandum and Order CLI–89–06. Subsequent to the issuance of CLI–89–06, the Secretary of Labor ruled on the validity of the disputed provision, found it void against public policy, and severed that provision. Macktal v. Brown & Root, Inc., Docket No. 86–ERA–2332, Order Rejecting in Part and Approving in Part Settlement Between the Parties and Dismissing Case at 10–14 (Nov. 14, 1989). Consequently, Macktal's claim that he may be prejudiced by the NRC's interpretation of this agreement is moot.

fy the five-factor test governing late-filed petitions for intervention, denied the petition to intervene. Texas Utilities Electric Company, CLI–88–12; 10 C.F.R. § 2.714(a)(i–v).

The NRC may exercise its discretion to grant a late-filed petition if it finds that a favorable showing has been made on the following five factors:

1. good cause for failure to file on time;
2. the availability of other means whereby the petitioner's interest will be protected;
3. the extent to which the petitioner's participation may reasonably be expected to assist in developing a sound record;
4. the extent to which the petitioner's interest will be represented by existing parties; and
5. the extent to which the petitioner's participation will broaden the issues or delay the proceeding.

The burden is on the petitioner to demonstrate that a balancing of these factors weighs in favor of granting the untimely petition. Metropolitan Edison Co. (Three Mile Island Nuclear Station, Unit 1), CLI–83–25, 18 NRC 327 (1985). If the petitioner fails to show good cause for failure to file on time, then the petitioner is bound to make a compelling showing of the remaining four factors before intervention is proper. See, e.g., Long Island Lighting Company (Shoreham Nuclear Power Station, Unit 1), ALAB–743, 18 NRC 387 (1983); Nuclear Fuel Services, Inc. (West Valley Reprocessing Plant) CLI–75–4, 1 NRC 273 (1975).

In support of its petition, CFUR alleged that it withdrew from the proceedings due to a financial inability to continue and in reliance on the assumption that CASE would continue to litigate the proceedings. CFUR further argued that it had no alternative means to protect its interest and that it could make important contributions to the record. Finally, CFUR argued that allowing it to intervene would not delay the proceedings which were dismissed prior to CFUR's petition to intervene.

The NRC concluded that CFUR had failed to demonstrate good cause for the late filing of the petition to intervene. The NRC then determined that CFUR had failed to make a compelling showing on the remaining four factors. While the NRC did find that two of the four factors (the availability of other means of protecting the petitioners' interests and the extent to which the petitioner's interest will be represented by existing parties), the NRC found that the remaining factors weighed heavily against CFUR. Accordingly, the NRC denied the petition to intervene based on CFUR's failure to make a compelling showing on the remaining factors.

CFUR now urges this Court to find that the NRC abused its discretion by finding that CFUR had failed to meet the five requirements for intervention under 10 C.F.R. § 2.714; we decline to do so.

## II. DISCUSSION

■ In reviewing agency action, this Court will defer to agency judgment unless the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). See, e.g., Baltimore Gas & Electric Co. v. NRDC, 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). This standard is even more deferential where, as here, a Court is reviewing an agency's application and interpretation of its own regulations. See, e.g., Robertson v. Methow Valley Citizens Council, —— U.S. ——, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).

■ CFUR bases its argument as to the first factor, good cause, primarily on CFUR's previous participation and subjective reliance on CASE's continued participation. CFUR points out that "CASE, as a tax-exempt organization, had been more successful in fundraising, and since CFUR had not established itself as a tax exempt organization, CASE was likely to be in a better position to raise funds for a combined effort. CFUR decided to withdraw in favor of CASE." Petitioners Brief at 8. CFUR further argues that the settlement agreement between CASE and TU Electric was unprecedented and that CFUR had no indication that such action might occur.

While this Court does not doubt the veracity of CFUR's allegation of surprise at CASE's settlement, such action on the part of CASE, in and of itself, does not create good cause for CFUR's late-filed petition to intervene. NRC precedent consistently and clearly indicates that a potential intervenor cannot rely on another intervenor to present a certain view or represent certain interests without assuming the risk that the intervenor will not do so. *See, e.g.,* Gulf States Utilities Company (River Bend Station, Units 1 and 2), ALAB–444, 6 NRC 760 (1977); *Easton Utilities Commission v. AEC,* 424 F.2d 847 (D.C.Cir.1970). CFUR argues that *River Bend* and *Easton* are not appropriate authority for the instant case because of the extensive prior involvement of CFUR in the proceedings. We do not agree. While CFUR did participate in the early stages of the proceedings, it withdrew in 1982, some six years before the ultimate settlement. At the time of the filing of the petition to intervene, CFUR was a legal stranger to the action.[4] As the NRC succinctly stated, "CFUR assumed the risk that CASE would not represent its interest to its complete satisfaction when it withdrew from the proceedings in 1982. It cannot now complain when that risk becomes reality." CLI–88–12 at 6.

CFUR next argues that, even in the absence of a determination of good cause, the NRC abused its discretion by failing to find that a compelling showing in support of intervention had been made as to the remaining four factors. The NRC did find in CFUR's favor on two of the four factors; however, the NRC concluded that the remaining two factors weighed heavily against CFUR. The NRC concluded that CFUR had failed to make a compelling showing, and we cannot conclude that this determination was an abuse of discretion.

■ In analyzing the third factor, the ability to contribute to a sound record, NRC pointed to CFUR's six year absence from the proceedings and to CFUR's failure to point with specificity to any specific accomplishments during its tenure as a participant or to any potential witnesses it intended to call at the hearings. Specificity is inherently necessary in order to allow the NRC to weigh the equities to determine if a compelling showing has been made. Without specificity, the NRC is forced to act as a mystic when determining if the potential intervenor has demonstrated a true ability to contribute to the record or is merely attempting to step in to delay the proceedings or otherwise act as a nuisance intervenor. The Appeal Board has stressed the importance of specificity as to this factor. Mississippi Power and Light Company (Grand Gulf Nuclear Station, Units 1 and 2), ALAB–704, 16 NRC 1725 (1982).

In light of the lack of specificity provided by CFUR, the NRC concluded that this factor weighed heavily against the petitioner. This attribution of weight was not an abuse of discretion.[5]

■ Finally, CFUR has failed to demonstrate that it would not delay the proceedings or broaden the issues. CFUR's petition was filed after the proceedings had been dismissed; CFUR has been absent from the proceedings for six years; and the petition filed by CFUR indicates that, at least in the area of QC/QA, CFUR will attempt to raise additional concerns.

Based on the foregoing, we cannot say that the NRC abused its discretion in finding that CFUR failed to make a compelling showing as to the remaining four factors. Although two of the factors did weigh in CFUR's favor, these two factors are to be

---

4. CFUR also argues that the circumstances imply a "sound foundation" for replacement because of the existence of the Macktal agreement. As we noted in footnote 3, the issue involving that agreement is moot; CFUR cannot rely on such an agreement to establish good cause for its late-filed petition.

5. Balancing this factor against CFUR is further supported by CFUR's failure to address the is-

sues raised by the Licensing Board in earlier proceedings. Prior to this petition, CFUR filed a petition to intervene which the Licensing Board permitted to be withdrawn without prejudice. In doing so, the Board indicated several areas which CFUR should address in order to demonstrate CFUR's ability to contribute to a sound record. CFUR did not fully address these issues.

accorded less weight. Commonwealth Edison Co. (Braidwood Nuclear Power Station, Units 1 and 2), CLI–86–8, 23 NRC 241 (1986).

## III. CONCLUSION

The action of the NRC in denying the late-filed petition for intervention is not arbitrary, capricious, or contrary to existing law. Having failed to demonstrate good cause for the late filing, CFUR was obligated to make a compelling showing as to the remaining factors. The NRC did not commit reversible error in concluding that such a showing had not been made. Consequently, we affirm.

AFFIRMED