United States Court of Appeals,

Fifth Circuit.

No. 92-4969

Summary Calendar.

Elmer T. WILSON, Sr. and Maxine Wilson, Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant-Appellee.

May 27, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Rice farmers appeal the decisions of two administrative agencies within the Department of Agriculture. The district court dismissed Appellants' claim against the Federal Crop Insurance Corporation (FCIC), concluding that Elmer Wilson (Wilson) failed to give timely notice of his crop loss as required by the insurance policy. The court also dismissed the Wilsons' claim against the Agricultural Stabilization and Conservation Service (ASCS), an agency that denied them disaster payments following their crop loss. We affirm the district court's decision dismissing all claims against the ASCS. We reverse and remand the dismissal of the claims against the FCIC, as there are questions of material fact which make summary treatment of this matter inappropriate.

I. *Background*

In the spring of 1988 the Wilsons planted rice on 1,013 acres of land. A little rain fell immediately after planting was completed in May, but a drought ensued and the seed did not germinate according to schedule. In June, the Wilsons attempted to flush their fields by saturating them with water from a nearby river. Unfortunately, torrential rains in July flooded their farm. Fearing that he suffered some partial crop damage, Mr. Wilson telephoned the insurance agent who

obtained federal crop insurance for him on his 1988 rice crop.[1]  She alerted agents from the FCIC, and adjusters from that agency inspected the Wilsons' property on at least two occasions.

In August 1988, an FCIC agent prepared a "Field Inspection and Claim for Indemnity" form, which Mr. Wilson signed.  It stated the date of damage as "May," and the date of notice as July 11, 1988.  This report also listed the cause of the crop loss as "1 inch rain on or about 23 May '88 [that] caused the seed to germinate, swell, and sour or ruin."  FCIC employees determined that the Wilsons' 1988 rice crop was a total loss.  The Wilsons maintain that they did not consider the crop a total loss until August 23, 1988, when the FCIC agents presented the "Field Inspection and Claim for Indemnity" form for Mr. Wilson's signature.

Based on its agents' conclusions that improper farming practices, and not adverse weather conditions, caused the crop loss, the FCIC rejected the Wilsons' claim for indemnity under the crop insurance contract.  *See* 7 C.F.R. § 401.89(d)1.b ("We do not insure against any loss caused by:  ... (2) The failure to follow recognized good farming practices for the insured crop").  At the national level of the administrative appellate process, the FCIC recanted slightly, and agreed that 40% of the Wilsons' crop loss was attributable to covered causes.  When the administrative remedies were exhausted, the Wilsons sued in federal district court.  *See* 7 U.S.C. § 1508(c) (1988) (preserving judicial review) (current version at 7 U.S.C. § 1508(f) (Supp.1993)).

During the FCIC proceedings, the Wilsons applied for disaster payments from the ASCS. The ASCS makes such payments to qualified applicants who are "unable to harvest at least 65 percent of the expected production...."  7 C.F.R. § 1477.5(a)(3)(iii) (1989).  Initial determinations of eligibility are made by an ASCS county/parish committee.  An applicant dissatisfied with a local committee's decision may appeal up the administrative chain.  *See* 7 C.F.R. § 780.3—.5 (1989); *see generally Raines v. United States,* 12 Cl.Ct. 530, 532 n. 1 (1987) (o utlining appellate process for ASCS decisions).  Once administrative appeals are exhausted the applicant may sue. *See* 15 U.S.C. § 714(c)

---

[1]For a discussion of the Federal Crop Insurance Corporation's operations, see *Berry v. United States,* 766 F.2d 886, 888-89 (5th Cir.1985).  The applicable regulations governing the FCIC insurance contract in the instant case are found at 7 C.F.R. § 401.8 (1988).  These regulations are binding on the insureds, and set forth the terms of the insurance contracts.  *Berry,* 766 F.2d at 889.

(1988).

The Wilsons' application for disaster payments was denied by the local ASCS Committee on May 24, 1990. Testimony from the County Agent convinced the committee that the Wilsons did not employ necessary farming practices and that this caused their crop loss. (Affidavit of Robert Bradley, former Executive Director, local ASCS Committee). The Wilsons protested this decision, and presented rebuttal evidence at a June 28, 1990 local ASCS Committee meeting. The Wilsons were accompanied by their attorney, and six local rice farmers who testified that the Wilsons had, in their opinion, used reasonable farming practices in caring for their 1988 rice crop.

Another hearing was held on July 10, 1990, during which the local ASCS Committee heard testimony from an FCIC agent. The committee also received information from the Army Corps of Engineers regarding rainfall amounts for July 1988; these amounts were lower than the figures provided by the Wilsons' earlier testimony. The local ASCS Committee concluded that its previous decision to deny disaster payments was proper, and despite the Wilsons' experience and knowledge regarding rice farming, they failed to carry out practices which were reasonably necessary to insure expected crop production. The state ASCS committee agreed. The Wilsons then sued.

The government moved to dismiss the Wilsons' claims under Rules 12(b)(1), (2), or (6); and alternatively, for summary judgment, under Rule 56. In this motion, the government urged for the first time that the Wilsons failed to give proper notice as required under the FCIC insurance policy.[2]

---

[2]7 C.F.R. § 401.8(d)8.a.(4) (1988) provides:

> [I]f you [insured] intend to claim an indemnity on any unit, a notice of loss must be given not later than 10 days after the earliest of:
>
> (a) Total destruction of the insured crop on the unit;
>
> (b) Harvest of the unit;  or
>
> (c) The calendar date for the end of the insurance period.

Additionally, all required notices must be presented in writing. 7 C.F.R. § 401.8(d)20. Failure to fulfill the notice requirements acts as a bar to recovery under the FCIC contract of insurance. *See, e.g., Mock v. United States,* 183 F.2d 174 (10th Cir.1950); *Spratlin v. FCIC,* 662 F.Supp. 870 (E.D.Ark.1987); *Byrne v. FCIC,* 289 F.Supp. 873 (D.Minn.1968).

The court initially denied the government's motion, stating that "This argument should have been made during one of the many administrative hearings and prior to the FCIC decision to award the plaintiffs partial recovery." R. 97. The district court, after the government filed a motion for reconsideration, reversed course and dismissed the Wilsons' claims because of their failure to comply with the applicable notice provisions. R. 152-53.[3]

## II. *Standard of Review*

The Appellee asked the trial court for alternative relief: (1) Summary judgment, Fed.R.Civ.P. 56; or, (2) dismissal for lack of subject matter jurisdiction, personal jurisdiction, or for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), (2), and (6). The district court's order stated only that the court was dismissing the Appellants' claims. R. 154. We will review this action as if the court granted summary judgment in favor of the government, because the court looked beyond the pleadings in reaching its decision:[4]

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

Fed.R.Civ.P. 12(b).

We will affirm a grant of summary judgment "where "we are convinced, after an independent review of the record, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Hartford Acc. & Indem. v. Costa Lines Cargo Serv.,* 903 F.2d 352, 362 (5th Cir.1990) (quoting *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States,* 832 F.2d 1358, 1364 (5th Cir.1987)) (internal citations omitted).

---

[3]The FCIC insurance policy's notice requirements do not apply to ASCS claims. The district court's dismissal order, however, did not distinguish between the two claims. Nevertheless, we review the claims separately: The FCIC action is, at bottom, an insurance contract dispute, while the denial of ASCS disaster payments is an administrative agency's decision. *See* discussion *infra,* at note 5.

[4]The basis for the dismissal, the Wilsons' untimely notice, was premised on the dates listed in the "Field Inspection and Claim for Indemnity" form. This document was not attached to either the complaint or the government's answer, rather it was attached to the government's motion for dismissal or summary judgment. *See* R. 38. Consequently, the form was outside of the pleadings presented. *See* Fed.R.Civ.P. 7(a) ("There shall be a complaint and an answer; a reply to a counterclaim denominated as such.... No other pleading shall be allowed[.]").

The Wilsons argue that the ASCS decision was arbitrary and capricious, and that the manner in which the ASCS reached its decision deprived them of due process protections. We address this point of error, along with the claim against the FCIC, in turn.[5]

### III. *ASCS Disaster Payments*

A. *Administrative Review*

ASCS decisions are subject to narrow judicial review: We look at the agency's decision to determine if it was reached in an arbitrary or capricious manner. *See Madsen v. Dep't of Agric.,* 866 F.2d 1035, 1036 (8th Cir.1989); *Westcott v. United States Dep't of Agric.,* 611 F.Supp. 351, 353 (D.Neb.1984), *aff'd,* 765 F.2d 121 (8th Cir.1985); *King v. Bergland,* 517 F.Supp. 1363, 1365 (D.Colo.1981). A decision is arbitrary or capricious "only when it is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Gibson v. United States,* 11 Cl.Ct. 6, 15 (1986) (quoting *Motor Vehicle Mfg. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made. *Id.*

The local ASCS committees make initial evaluations of eligibility for disaster payments: "The county committee determines that because of an *eligible disaster condition* ..." the applicant was unable to harvest his expected yield. 7 C.F.R. § 1477.5(a)(3) (1989) (emphasis added). An "eligible disaster" is defined as "damaging weather, including but not limited to drought, hail, excessive moisture, freeze, tornado, hurricane, or excessive wind, or any combination thereof[.]" *Id.* at § 1477.3(f). The local ASCS Committee concluded that improper farming practices, not an eligible disaster condition, were responsible for the Wilsons' crop losses. There is sufficient evidence in the

---

[5]As a preliminary matter, we determine that we do have before us *both* the claim on the FCIC insurance contract, and the claim against ASCS for denying disaster payments. There appeared to be some confusion surrounding the status of the ASCS claim. The government's motion to dismiss was premised on the FCIC insurance contract and applicable federal regulations; the 10-day notice requirement does not apply to the claim against the ASCS. However, when the district court granted the Appellee's motion, it spoke in terms broad enough to encompass all causes of action: "[P]laintiffs' *claims against the defendant* are DISMISSED with prejudice." R. 154 (August 25, 1992 Judgment of District Court) (emphasis added). *See* 28 U.S.C. § 1291 (1988); Fed.R.Civ.P. 58. Appellants' notice of appeal recognizes the district court's actions as effecting a final judgment against their claims. R. 159.

administrative record to support this conclusion.

There were three hearings before the local ASCS Committee. Evidence was taken from, among others, the local county agent, Rodney Ewing, and FCIC agent Leonard Terrell. Terrell recounted for the Committee what he observed during his August 1988 visits to the Wilsons' farm. The lack of "gates" on the Wilsons' levees indicated to Terrell that the fields could not have been adequately flushed.

Ewing testified regarding his July 25, 1988 inspection. He reported seeing stands of rice that were only four to six inches tall. The Committee referred to Extension Service materials on rice production which indicated that rice correctly planted in mid-May and cared for in the proper manner should have been approximately fourteen inches high by the time Ewing visited the Wilsons' farm in late July.

The Wilsons presented testimony in support of their position. During the June 28, 1990 meeting of the committee, six local farmers testified on the Wilsons' behalf. The commitee questioned these witnesses, and was able to draw from their experiences as rice producers.

Based on all the information it received, the local ASCS Committee concluded that the Wilsons did not employ the necessary farming practices required to make a rice crop. (Affidavit of Robert Bradley, former Executive Director, local ASCS Committee). This conclusion is not " "so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Gibson v. United States,* 11 Cl.Ct. 6, 15 (1986) (quoting *Motor Vehicle Mfg. Ass'n v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)). Furthermore, there is ample evidence in the record to support the ASCS's judgment. We are unpersuaded that the ASCS decision is arbitrary or capricious.

B. *Due Process Concerns*

The Wilsons maintain that their fundamental right to due process was violated because they were not permitted to fully participate in the decision making process. Specifically, they argue that the local committee did not inform them of meetings when their disaster application was being considered. The committee, in the Wilsons' absence, heard testimony from Rodney Ewing and later

Leonard Terrell. The Wilsons contend that they should have been permitted the opportunity to cross-examine these witnesses.

Absent an identifiable property interest, the Appellants cannot argue they were denied due process. *See Board of Curators v. Horowitz,* 435 U.S. 78, 82, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978); *Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921, 929 (5th Cir.1988). In the instant dispute, the Wilsons contend that they have a property interest in receiving disaster payments. This is incorrect: "The mere fact that a government program exists does not give a person a property interest in participating in the program." *Westcott,* 611 F.Supp. at 359; *see also Mahone,* 836 F.2d at 930 (property interests are created by existing contract, statute, or mutually recognized entitlement).[6]

To participate in the ASCS disaster payment program, applicants must make a threshold showing of eligibility, *i.e.* that their loss was caused by an "eligible disaster." The Wilsons presented evidence in support of their position, but the local ASCS committee concluded that the Wilsons' losses was due to improper farming techniques. We held, as explained above, that this decision is not arbitrary or capricious, and is adequately supported by the administrative record. There is no deprivation of due process under the facts of this case. *Cf. Westcott,* 611 F.Supp. at 359 ("It appears that the plaintiff may not have been informed of one of the county committee meetings at which his farms were discussed, but he was able to present his views at all levels of the agency's determination process.").

IV. *FCIC Claim*

The district court's decision to dismiss the Wilsons' claims against the FCIC rested on the failure of the Appellants to comply with the notice requirements of their FCIC insurance contract. *See supra* note 2 (applicable regulations cited). As these regulations have the force of law, we review their application *de novo. See FCIC v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

---

[6]*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), a case relied on by the Appellants, is readily distinguishable. Eldridge had his *previously* awarded social security benefits terminated, and the Court ultimately held that he was not entitled to a pre-termination evidentiary hearing. *Id.* at 340-41, 96 S.Ct. at 905. If anything, this case cuts against the Appellants' position.

The FCIC regulation cited by the government, and relied upon by the district court, requires that an insured who intends to claim an indemnity on any covered acreage give a notice of loss "not later than 10 days after the earliest of: (1) Total destruction of the insured crop on the unit; (2) Harvest of the unit; or (c) The calendar date for the end of the insurance period." 7 C.F.R. § 401.8(d)8.a.(4) (1988). Only the first triggering event, the total destruction of the insured crop, is relevant to the present dispute.

The Wilsons contend they never claimed that their 1988 rice crop was a total loss. Rather, this was the conclusion that the FCIC reached, and Mr. Wilson was first alerted of the agency's position when he signed the "Field Inspection and Claim for Indemnity" form on August 23, 1988. Since the FCIC made the determination which triggered the notice requirement (total crop loss), the Wilsons argue that notice was properly given when he signed the form on August 23, 1988.

The FCIC takes a contrary view, and urges that the time for notice began to run before their agents determined the rice crop was a total loss. The FCIC points to the dates listed on the "Field Inspection and Claim for Indemnity" form and contends that these are the date(s) which trigger the time for giving notice. On the inspection report, the "Date of Damage" is listed as "May," and the "Date of Notice" is given as July 11, 1988. An accompanying notation indicates that the primary cause of the crop loss was an inch of rain which fell on May 23, 1988 and caused the rice seed to "germinate, swell and sour or ruin." Even using July 11, 1988 as the triggering date, the FCIC maintains that the August 23, 1988 inspection report does not satisfy the ten day notice requirement.

The issue appears to be fairly pedestrian: Notice is to be given within ten days of the date of total crop loss. The FCIC's argument implies that insureds should provide notice immediately after a potential damaging event, *e.g.* heavy rains. Consequently, the date of the event would start the ten-day clock running. However, this could likely inundate local administrators with notices sent by farmers out of an abundance of caution.[7] Appellants urge that something akin to the discovery rule should apply. Under this argument the notice period only starts to run when the insured actually

---

[7]This approach also disregards the fact that crop loss may not be apparent until well after the damaging event has passed.

discovers a loss, which can occur long after the flood waters have receded. This approach is also problematic, in that it runs contrary to regulations calling for advance notice of potential claims. *See* 7 C.F.R. § 401.8(d)8 (1988).

We generally defer to an agency's interpretation of its own regulations and procedural rules. *See Citizens for Fair Util. Regulation v. N.R.C.,* 898 F.2d 51, 54 (5th Cir.), *cert. denied,* 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990). We cannot do so in this matter, however, as the FCIC has put forth two positions that are at loggerheads with each other.

First, the FCIC contends that the regulations are unambiguous, and that notice must be given when the crop is totally destroyed. The agency argues that the Wilsons' triggering event—total crop loss—should be determined by looking at the dates the Wilsons entered on the August 23, 1988 "Field Inspection and Claim for Indemnity" form. In the next breath, however, the FCIC posits "All determinations required by the policy will be made by the FCIC," and cites 7 C.F.R. § 401.8(d)(19) (1988). The agency concludes by stating, "[T]he FCIC has reasonably interpreted its regulations to specify that the agency make all final determinations regarding *extent of crop loss,* and to require notice within ten days for *total loss of crops....*" (emphasis added). Query, if the FCIC has the final say on all determinations regarding extent of crop loss, is not the August 23, 1988 notice timely? After all, it was not until this date that the FCIC deemed the Wilsons' rice crop a total loss.[8]

We will not answer our rhetorical question. Suffice it to say that after an independent review of the record, we are unconvinced that the Department of Agriculture is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Hartford Acc. & Indem. v. Costa Lines Cargo Serv.,* 903 F.2d 352, 362 (5th Cir.1990).

V. *Conclusion*

---

[8]In the cases cited by the FCIC regarding notice of loss, there are definite times or events set out in the policies which trigger the notice requirement. For example, in *Felder v. FCIC,* 146 F.2d 638 (4th Cir.1944), notice of loss was to be given when the crop was weighed, disposed of, or by January 21, 1943—whichever came first. If the crop was totally destroyed before these events, the loss date was to be determined by the FCIC. Similarly, in *Spratlin v. FCIC,* 662 F.Supp. 870 (E.D.Ark.1987), notice was to be given no later than thirty days from (1) harvest; (2) calendar date for the end of the insurance period; or, (3) the date the crops were destroyed *as determined by the FCIC. Id.* at 871 n. 1.

We REVERSE the decision of the district court to dismiss the Wilsons' FCIC claims, and REMAND this matter.[9] Because the decision of the ASCS was neither arbitrary or capricious, and was adequately supported by evidence in the administrative record, we AFFIRM the dismissal of claims against the ASCS.

AFFIRMED in part; REVERSED and REMANDED in part.

---

[9]We do not reach the Wilsons' estoppel argument, which they have raised against the FCIC's decision. We will note, however, that the use of estoppel claims against the government is severely limited. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 433, 110 S.Ct. 2465, 2476, 110 L.Ed.2d 387 (1990); *Rosas v. United States Small Business Admin.,* 964 F.2d 351, 360 (5th Cir.1992).