Tommy **BROUILLETTE**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE.**

Civ. A. No. 93–0747.

United States District Court, W.D. Louisiana, Alexandria Division.

Nov. 30, 1993.

Michael Moyse Wahlder, Alexandria, LA, for Tommy Brouillette.

John Robert Halliburton, U.S. Attys. Office, Shreveport, LA, for U.S. Dept. of Agriculture, Agr. Stabilization & Conservation Service.

LITTLE, District Judge.

### RULING

Plaintiff Tommy Brouillette brings this suit against defendant the United States Department of Agriculture, Agricultural Stabilization and Conservation Services (hereinafter the "United States" or the "ASCS") for monetary compensation allegedly due under the Disaster Payment Program administered by the ASCS. The plaintiff is a farmer in Avoyelles Parish, Louisiana, who, together with Richard Tassin, the plaintiff in an identical suit against the United States, planted a cotton crop in 1991. Heavy rainfall during the first six months of 1991 caused a great deal of destruction to crops in Avoyelles Parish. The acreage planted by the plaintiff and Mr. Tassin was entirely destroyed, whereupon the plaintiff, together with Mr. Tassin, applied through the ASCS county committee for disaster credit. The ASCS did not compensate the plaintiff for the loss of the entire crop, however, but instead reduced the plaintiff's compensable yield by one-third following the determination that the plaintiff's substandard farming techniques contributed to the crop's demise.

The plaintiff and Mr. Tassin jointly appealed this decision before the same committee. At the appeal, Mr. Brouillette read a prepared statement into the record which described his farming techniques and explained why he felt the decision to reduce his yield was unfair. In that statement, he advised the committee that he and Mr. Tassin had disked their fields as early as weather permitted; that planting was stopped after only 185 acres had been planted; that the rest of the land would have been planted had condi-

tions been more favorable; that all steps were taken to produce a cotton crop; and that, in light of all this, there was no reason why plaintiff should be singled out for yield reduction. Mr. Brouillette also explained that planting was made in accordance with the crop insurance deadline. Mr. Tassin, acting as a witness for Mr. Brouillette, inquired at this time why other farmers employing similar techniques had not been penalized. Mr. Wayne Gremillion, another local cotton farmer whose cotton yield was not reduced, appeared at the hearing to testify that his production differed from that of Mr. Brouillette's and Mr. Tassin's in that he (Mr. Gremillion) did not plant his crop in accordance with the planting deadline imposed by the crop insurer, and because he "rowed up" his land and applied fertilizer.

The committee considered this information and thereafter sent the plaintiff a letter indicating that the reduction in the cotton yield would remain. The committee explained that while the crop's destruction was caused, in part, by excess moisture, the plaintiff's failure to get a satisfactory stand was also a product of the plaintiff's planting date, which was set for purposes of meeting crop insurance deadlines and not for purposes of producing a crop with the expectation of a normal harvest. Additionally, the grassy, wet conditions in which the plaintiff planted were considered by the committee to be "unworkmanlike."

The plaintiff and Mr. Tassin then jointly appealed to the State ASCS Committee, which, following an investigation, denied the appeal. Finally, the plaintiff appealed to the National Appeals Division, which likewise determined that the plaintiff's fields were grassy and wet, that this had a significant impact on the crop's failure, and that the decision to reduce the plaintiff's crop yield by one-third was correct. The plaintiff then filed this claim for relief on 30 April 1993 pursuant to 7 U.S.C. § 1508(f) (1993), which preserves judicial review of claims for indemnity under the Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq.

Before the court is the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

 Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. In our analysis, we view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.), *reh'g denied,* 920 F.2d 259 (5th Cir.1990); *cert. denied,* —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). Before we can find that no genuine issues of material fact exist, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.* The nonmoving party may not depend solely on denials contained in the pleadings, but must submit specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Hibernia National Bank v. Carner,* 997 F.2d 94, 98 (5th Cir.1993); *Harbor Ins. Co. v. Urban Constr. Co.,* 990 F.2d 195, 199 (5th Cir.1993), *reh'g denied; Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *reh'g denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Topalian,* 954 F.2d at 1131.

 In addition to the standard required by Rule 56, we are required to apply a standard of review that is specific to the review of administrative agencies. This standard is one of great deference and does not include a *de novo* review of the facts. Reversal of an agency decision is appropriate only upon a finding that the administrative adjudication was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bank of Commerce v. City Nat'l Bank,* 484 F.2d 284, 289 (5th Cir.1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974); *see also Wilson v. U.S. Dep't of Agric.,* 991 F.2d 1211, 1215 (5th Cir.1993), *reh'g denied,* ("ASCS decisions are subject to narrow judicial review: We look at the agency's decision to determine if it was reached in an arbitrary or capricious man-

ner."); *Madsen v. Dep't of Agric.*, 866 F.2d 1035, 1036 (8th Cir.1989), *reh'g denied.* A decision is arbitrary or capricious "only when it is 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Wilson*, 991 F.2d at 1215. The job of the reviewing court, therefore, is only to determine whether the administrative findings are supported by substantial evidence of the record as a whole. *Bank of Commerce*, 484 F.2d at 289.

■ The defendant contends that the ASCS record supports the finding that the plaintiff did not employ proper farming techniques. As such, the defendant maintains that the decision to reduce the plaintiff's cotton yield was not arbitrary or capricious. The plaintiff, on the other hand, argues that he adequately cared for his cotton crop, that heavy rain prevented him from obtaining a stand of cotton, and that the defendant's actions were arbitrary and capricious. For the reasons that follow, we agree with the defendant and grant the defendant's motion for summary judgment.

The local ASCS committee, in accordance with the powers vested in it by federal statute, made the initial evaluation of whether the plaintiff was eligible for disaster relief. *See* 7 C.F.R. § 1477.5(a)(4) (1993). Following this determination, the plaintiff's case was re-examined by the committee, and then reviewed by the State Committee and the National Appeals Division. In each of these proceedings, the plaintiff was given the opportunity to express his views. The administrative record pertaining to the local and state committee appeals reveals that the committees not only listened to the plaintiff, but also considered a great deal of other information, including the practices of other farmers, the number of yield reductions authorized by the local committee, how many producers in Avoyelles Parish did not produce a crop in 1991, what procedure was used by the local committee in determining whether to reduce a crop yield, etc. The decisions rendered by the committees were not hasty. On the contrary, all decision-making was deferred until all pertinent information had been obtained. Likewise, the National Committee had a telephone hearing with the plaintiff and then reviewed the entire case file prior to rendering its decision. Only then did the National Committee determine as follows:

> County committee members as locally elected farmers are in the best position to determine if crop losses in the county are the result of an eligible disaster condition as opposed to other causes. County committee members are also most familiar with farming practices which are normal for your area.... The county committee determined your crops were not cared for in a workmanlike manner because several fields were extremely grassy. The county committee also found that other producers in the area got an acceptable stand of cotton on at least some of their acreage. Consequently, the county committee assigned a temporary yield reduction to account for the losses it determined resulted from your failure to establish and care for the cotton in a workmanlike manner rather than related whether conditions. We have determined the county committee considered the proper criteria in assigning the temporary yield reduction....

Based on all the information they received, the local ASCS committee, the State Committee, and the National Appeals Division all concluded that the plaintiff's crop failure was partially caused by his and Mr. Tassin's farming techniques. Our review of this determination reveals that ample evidence exists in the administrative record to support the finding that the plaintiff's ruined crop was partly caused by plaintiff's and Mr. Tassin's unorthodox farming practices and was not wholly attributable to inclement weather. Therefore, we do not find that the decision to reduce the plaintiff's crop yield was so "implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Gibson v. United States*, 11 Cl. Ct. 6, 15 (1986) (quoting *Motor Vehicle Mfg. Ass'n v. State Farm Mutual*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)); *See also Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir.1993). In sum, we are not persuaded that the ASCS decision was arbitrary or capricious.

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED.